590 So.2d 446 (1991)
Wayne BOYNTON, Sr., individually, as father and next best friend of Wayne Boynton, Jr., deceased, and as personal representative and survivor of the Estate of Wayne Boynton, Jr., and Dorothy Boynton, individually, as mother, next best friend, and survivor of the Estate of Wayne Boynton, Jr., Appellants,
v.
Milton BURGLASS, M.D., and Milton Burglass, M.D., P.A., Appellees.
No. 89-1409.
District Court of Appeal of Florida, Third District.
September 24, 1991.
As Amended on Grant in Part of Motion for Rehearing or Certification December 24, 1991.
*447 Friedman & Friedman, P.A., and John S. Seligman, Coral Gables, for appellants.
Simon, Schindler & Sandberg, P.A., and Neil Rose, Miami, for appellees.
Scott Mager, Miami, for Academy of Florida Trial Lawyers, as amicus curiae.
John Hedrick, Asst. General Counsel, Tallahassee, for the Florida Dept. of Health and Rehabilitative Services, as amicus curiae.
Mathews, Osborne, McNatt & Cobb and Jack W. Shaw, Jacksonville, for Florida Defense Lawyers Ass'n, as amicus curiae.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, FERGUSON, JORGENSON, COPE, LEVY, GERSTEN and GODERICH, JJ.

ON REHEARING EN BANC
JORGENSON, Judge.
By this appeal we are asked to adopt the rule announced by the California Supreme Court in Tarasoff v. Regents of University of California[1] and hold that a psychiatrist who allegedly "knows, or should know," that a patient of his presents a serious threat of violence to a third party has a duty to warn the intended victim. Because this case is of great public importance, the court, on its own motion, granted rehearing en banc. For the reasons which follow, we decline to recognize such a duty and affirm the order of the trial court dismissing plaintiffs' complaint with prejudice for failure to state a cause of action.[2]
On May 13, 1986, Lawrence Blaylock shot and killed Wayne Boynton, Jr.[3] Blaylock had been an outpatient of psychiatrist Milton Burglass, M.D. Boynton's parents sued Dr. Burglass for malpractice. The complaint alleged that Dr. Burglass failed to hospitalize Blaylock, failed to warn Boynton, Boynton's family, or the police that Blaylock was violence-prone and had threatened serious harm to Boynton, and failed to prescribe the proper medications for Blaylock.[4] Because Dr. Burglass refused to release his patient's medical records to the plaintiffs, the complaint did not contain allegations of specific threats made by Blaylock against the victim. Instead, plaintiffs alleged simply that the psychiatrist "knew, or in the exercise of reasonable due care, should have known that prior to May 13, 1986, Lawrence Blaylock, Jr. had threatened serious harm to a specific victim, to wit: Wayne Boynton, Jr."[5] The complaint further alleged that, as a direct and proximate consequence of the psychiatrist's negligence, Blaylock shot and killed Boynton.
Dr. Burglass moved to dismiss the complaint for failure to state a claim for relief. The trial court granted the motion with prejudice; we affirm.
This is a case of first impression in Florida. Although other jurisdictions[6] have *448 followed the lead of the California Supreme Court in the landmark decision of Tarasoff v. Regents of Univ. of California, 17 Cal.3d 425, 131 Cal. Rptr. 14, 551 P.2d 334 (1976), we reject that "enlightened" approach.[7]
Florida courts have long been loathe to impose liability based on a defendant's failure to control the conduct of a third party. See, e.g., Bankston v. Brennan, 507 So.2d 1385 (Fla. 1987) (social host not liable for serving alcoholic beverages to individual who then injures another); Paddock v. Chacko, 522 So.2d 410 (Fla. 5th DCA 1988) (psychiatrist had no duty to forcibly detain patient who later attempted to commit suicide); Vic Potamkin Chevrolet, Inc. v. Horne, 505 So.2d 560 (Fla. 3d DCA 1987) (automobile dealer not liable for buyer's negligent driving once ownership of automobile transferred to buyer), approved, 533 So.2d 261 (Fla. 1988). When the duty sought to be imposed is dependent upon standards of the psychiatric profession, we are asked to embark upon a journey that "will take us from the world of reality into the wonderland of clairvoyance." Tarasoff, 551 P.2d at 354, 131 Cal. Rptr. at 34 (Mosk, J., concurring and dissenting). Psychiatry "represents the penultimate grey area ... particularly with regard to issues of foreseeability and predictability of future dangerousness." Lindabury v. Lindabury, 552 So.2d 1117, 1118 (Fla. 3d DCA 1989) (Jorgenson, J., dissenting) (citations omitted); Fischer v. Metcalf, 543 So.2d 785, 787 n. 1 (Fla. 3d DCA 1989) ("Unlike other branches of medicine in which diagnoses and treatments evolve from objective, empirical, methodological foundations, `psychiatry is at best an inexact science, if, indeed, it is a science... .'") (citations omitted). It is against the backdrop of this uncertain and inexact science that we address the legal issues presented by this appeal.

I. The Duty to Warn

Plaintiffs contend that Dr. Burglass had a duty, under the common law, to warn Boynton (or the police, or Boynton's family) that Blaylock intended to harm him. In our view, imposing on psychiatrists[8] the duty that plaintiffs urge is neither reasonable nor workable and is potentially fatal to effective patient-therapist relationships.
Under the common law, a person had no duty to control the conduct of another or to warn those placed in danger by such conduct; however, an exception to that general rule can arise when there is a special relationship between the defendant and the person whose behavior needs to be controlled or the person who is a foreseeable victim of that conduct. See Fischer v. Metcalf, 543 So.2d 785, 787 n. 1 (Fla. 3d DCA 1989); Department of Health & Rehab. Servs. v. Whaley, 531 So.2d 723 (Fla. 4th DCA 1988); Garrison Retirement Home Corp. v. Hancock, 484 So.2d 1257 (Fla. 4th DCA 1985); see also Rest.2d Torts §§ 314-320. Implicit in the creation of that exception, however, is the recognition that the person on whom the duty is to be imposed has the ability or the right to control the third party's behavior. Restatement §§ 316-319. "Thus, in the absence of a relationship involving such control, the exception to the general rule, that there is no duty to control the conduct of a third party for the protection of others, should not be applicable." Hasenei v. United States, 541 F. Supp. 999, 1009 (D.Md. 1982) (psychiatrist who had no right or ability to control voluntary outpatient's *449 behavior could not be held liable for failure to warn patient's victim, especially where psychiatrist unable to predict identifiable danger posed by patient to any person). In Tarasoff, the California Supreme Court characterized the relationship between the psychiatrist and the patient or the intended victim of the patient by stating that "[t]here now seems to be sufficient authority to support the conclusion that by entering into a doctor-patient relationship the therapist becomes sufficiently involved to assume some responsibility for the safety, not only of the patient himself, but also of any third person whom the doctor knows to be threatened by the patient." Tarasoff, 131 Cal. Rptr. at 24, 551 P.2d at 344, citing Fleming & Maximov, The Patient or His Victim: The Therapist's Dilemma, 62 Cal. L.Rev. 1025, 1030 (1974). The Tarasoff court did not address the issue of the psychiatrist's control over the patient but simply opined that "[s]uch a relationship may support affirmative duties for the benefit of third persons." 131 Cal. Rptr. at 23, 551 P.2d at 343.
In this case, Blaylock was a voluntary psychiatric outpatient treated by Dr. Burglass. A federal court has described the relationship between a psychiatrist and a voluntary outpatient as lacking "sufficient elements of control necessary to bring such relationship within the rule of § 315." Hasenei, 541 F. Supp. at 1009. We agree. "Once the suggestion of control is eliminated, there is nothing in the nature of the relationship between a psychiatrist and his patient to support an exception to the tort law presumption." Stone, The Tarasoff Decisions: Suing Psychotherapists to Safeguard Society, 90 Harv.L.Rev. 358, 366 (1976). The complaint nowhere alleges that Dr. Burglass had either the right or the ability to control Blaylock's behavior. Dr. Burglass, therefore, cannot be charged with the duty to control. Compare Nova Univ., Inc. v. Wagner, 491 So.2d 1116 (Fla. 1986) (where institution that housed and rehabilitated children with behavioral and emotional problems had taken charge of persons likely to harm others, institution had duty to exercise reasonable care to avoid foreseeable attacks by its charges upon third persons).[9]
The nature of the relationship between Dr. Burglass and the victim does not become any less tenuous or give rise to a more definable duty by attempting to transform the duty to control Blaylock's behavior into a duty to warn Boynton or others about Blaylock's behavior or to otherwise protect them. "The duty to warn is an expression of humanitarianism and the spirit of the Good Samaritan... ." Currie v. United States, 836 F.2d 209, 213 (4th Cir.1987). The creation, by process of law, of such a duty would be no more than a recognition that "[o]ur current crowded and computerized society compels the interdependence of its members. In this risk-infested society we can hardly tolerate the further exposure to danger that would result from a concealed knowledge of the therapist that his patient was lethal." Tarasoff, 131 Cal. Rptr. at 27, 551 P.2d at 347. By imposing such duties, courts recognize the responsibilities inherent in social living and human relations. McIntosh v. Milano, 168 N.J. Super. 466, 403 A.2d 500, 507 (1979). However, imposition of such a duty must be reasonable, and must give the parties on whom the duty is imposed fair notice of what is required of them. We decline to fashion a rule of law from such social duties.

II. Predictions of Dangerousness

Because psychiatry is, at best, an inexact science, courts should be reluctant to impose liability upon psychiatrists. "Psychiatry is not, however, an exact science, and psychiatrists disagree widely and frequently on what constitutes mental illness, on the appropriate diagnosis to be attached to given behavior and symptoms, on cure and treatment, and on the likelihood of future dangerousness." Ake v. Oklahoma, 470 U.S. 68, 81, 105 S.Ct. 1087, 1095, 84 L.Ed.2d *450 53, 64-65 (1985). Although Florida courts recognize that a physician owes a duty to warn members of a patient's immediate family of the existence and dangers of a communicable disease, Hofmann v. Blackmon, 241 So.2d 752 (Fla. 4th DCA 1970), cert. denied, 245 So.2d 257 (Fla. 1971), "[u]nlike a physician's diagnosis, which can be verified by x-ray, surgery, etc., the psychiatrist cannot verify his diagnosis, treatment or predicted prognosis except by long-term follow-up and reporting." Nesbitt v. Community Health of South Dade, Inc., 467 So.2d 711, 717 (Fla. 3d DCA 1985) (Jorgenson, J., concurring and dissenting), quoting Almy, Psychiatric Testimony: Controlling the "Ultimate Wizardry" in Personal Injury Actions, 19 The Forum 233, 243 (1984).
The outward manifestations of infectious diseases lend themselves to accurate and reliable diagnoses. However, the internal workings of the human mind remain largely mysterious. The "near-impossibility of accurately or reliably predicting dangerousness has been well-documented." Hasenei v. United States, 541 F. Supp at 1011, citing Diamond, The Psychiatric Prediction of Dangerousness, 123 U.Pa.L.Rev. 439 (1974); Ennis & Litwack, Psychiatry & The Presumption of Expertise: Flipping Coins in the Courtroom, 62 Calif.L.Rev. 693 (1974); Stone, supra.[10]
To impose a duty to warn or protect third parties would require the psychiatrist to foresee a harm which may or may not be foreseeable, depending on the clarity of his crystal ball. Because of the inherent difficulties psychiatrists face in predicting a patient's dangerousness, psychiatrists cannot be charged with accurately making those predictions and with sharing those predictions with others. Therefore, we decline to charge Dr. Burglass with such a duty.

III. Confidentiality and the Psychiatrist-Patient Relationship

Imposing on psychiatrists a duty to warn third parties would not only be unreasonable and unworkable, it would also wreak havoc with the psychiatrist-patient relationship.
Confidentiality is the cornerstone of the psychiatrist-patient relationship. The psychotherapist-patient privilege is codified in the Florida Evidence Code, section 90.503, Florida Statutes (1985), which provides that "[a] communication between psychotherapist and patient is `confidential' if it is not intended to be disclosed to third persons... ." Had Dr. Burglass disclosed Blaylock's real or apparent threat to Boynton, he would have breached not only his ethical duty to his patient, but also section 90.503.
In addition to holding that there is no common-law duty to warn, we further hold that the Florida legislature has not created such a duty. Plaintiffs argue that section 455.2415, Florida Statutes (1989), applies in this case and allows Dr. Burglass to divulge his patient's communications "to the extent necessary to warn a potential victim." Section 455.2415 provides, in pertinent part, that if:
(1) A patient is engaged in a treatment relationship with a psychiatrist;
(2) Such patient has made an actual threat to physically harm an identifiable victim or victims; and
(3) The treating psychiatrist makes a clinical judgment that the patient has the apparent capability to commit such an act and that it is more likely than not that in the near future the patient will carry out the threat, the psychiatrist may disclose patient communications to the extent necessary to warn any potential victim or to communicate the threat to a law enforcement agency.
However, section 455.2415 became effective on February 8, 1988; the legislature specifically provided that "[t]his act does not apply to causes of action arising prior to the effective date of this act." Chapter *451 88-1, § 10, Laws of Florida. Wayne Boynton was murdered on May 13, 1986, long before section 455.2415 was in force. Moreover, section 455.2415 does not require a psychiatrist to warn in these circumstances but is couched in permissive terms, and merely provides that a psychiatrist "may disclose patient communications... ." We conclude, therefore, that section 455.2415 has no effect on this case.
Imposing on Dr. Burglass a duty to warn would not only run afoul of the psychiatrist-patient confidentiality privilege, but would also severely hamper, if not destroy, the relationship of trust and confidence that is crucial to the treatment of mental illness.
By the very nature of psychotherapy, the patient is encouraged to freely vocalize his fantasies, repressed feelings, and desires. Requiring psychiatrists to warn potential victims every time a patient expresses feelings of anger toward someone would seriously interfere with the treatment, both because of the breach in confidentiality and the practical problem of determining whether a patient really intended to carry out his violent feelings.
Wolfe, The Scope of a Psychiatrists's Duty to Third Persons: The Protective Privilege Ends Where the Public Peril Begins, 59 Notre Dame L.Rev. 770, 785-86 (1984). Requiring a psychiatrist to breach that privilege in order to warn a third party would inhibit the free expression vital to diagnosis and treatment and would, thus, undermine the very goals of psychiatric treatment.

IV. Conclusion

The criminal act committed by Lawrence Blaylock resulted in the tragic and irreparable loss of Wayne Boynton's life. In the face of such a loss, we understand the need of the victim's family to blame an identifiable source and to ask this court to recognize that the psychiatrist who treated their son's killer had a legal obligation to warn them, their son, or the police of his patient's murderous intent. There is not sufficient science to allow the accurate prediction of future dangerousness. Because such predictions are fraught with uncertainty, we find that it would be fundamentally unfair to charge a psychiatrist with the duty to warn.
Based on the foregoing analysis, we affirm the dismissal, with prejudice, of plaintiff's complaint for failure to state a cause of action.[11]
Affirmed.[12]
BARKDULL, HUBBART, NESBITT and GODERICH, JJ., concur.
COPE, Judge (specially concurring).
I concur in the judgment.
The present case arose in 1986, prior to the enactment of section 455.2415, Florida Statutes (Supp. 1988). See ch. 88-1, § 10, Laws of Fla. The statute became effective in 1988 and "does not apply to causes of action arising prior to the effective date of this act." Ch. 88-1, § 86, Laws of Fla.
For the period prior to the 1988 enactment, the common law and statutory duties of confidentiality imposed upon psychotherapists constituted a barrier to the imposition of a duty to warn. I therefore join in affirming the judgment below. It is premature for us to express any view on the existence and scope of any duty subsequent to the 1988 amendment.
GERSTEN, J., concurs.
SCHWARTZ, Chief Judge (dissenting).
During consultation with Dr. Burglass, Blaylock threatened to kill Boynton. The doctor did not warn Boynton or anyone else in any way. True to his word, Blaylock killed Boynton.[13] The court says that, no matter what the underlying circumstances, no matter how great the danger, no matter *452 how trivial the effort required to prevent the harm, no matter what the proof concerning the likelihood that even a phone call might have saved a human life, no jury could properly hold Dr. Burglass civilly liable. I cannot agree with a conclusion which seems to me to be so contrary to the requirements of a civilized society and therefore to what should be the standards of our law.
The issue in this case has been the subject of a great number of decisions and commentary flowing from Justice Tobriner's seminal opinion in Tarasoff v. Regents of Univ. of Cal., 17 Cal.3d 425, 131 Cal. Rptr. 14, 551 P.2d 334 (1976). It would be a useless waste of valuable space in the Southern Reporter to reproduce or reword the arguments already advanced in support of the conclusion that liability may arise in such a situation. I would simply hold:
[t]hat a psychiatrist or therapist may have a duty to take whatever steps are reasonably necessary to protect an intended or potential victim of his patient when he determines, or should determine, in the appropriate factual setting and in accordance with the standards of his profession established at trial, that the patient is or may present a probability of danger to that person. The relationship giving rise to that duty may be found either in that existing between the therapist and the patient, as was alluded to in Tarasoff II, or in the more broadly based obligation a practitioner may have to protect the welfare of the community, which is analogous to the obligation a physician has to warn third persons of infectious or contagious disease.
McIntosh v. Milano, 168 N.J. Super. 466, 489-90, 403 A.2d 500, 511-12 (Law Div. 1979); accord, e.g., Lipari v. Sears, Roebuck & Co., 497 F. Supp. 185 (D.Neb. 1980); Hamman v. County of Maricopa, 161 Ariz. 58, 775 P.2d 1122 (1989); Hedlund v. Superior Court, 34 Cal.3d 695, 194 Cal. Rptr. 805, 669 P.2d 41 (1983); Naidu v. Laird, 539 A.2d 1064 (Del. 1988); Bardoni v. Kim, 151 Mich. App. 169, 390 N.W.2d 218 (1986); Davis v. Lhim, 124 Mich. App. 291, 335 N.W.2d 481 (1983); Littleton v. Good Samaritan Hospital & Health Center, 39 Ohio St.3d 86, 529 N.E.2d 449 (1988); Peck v. Counseling Serv. of Addison County, Inc., 146 Vt. 61, 499 A.2d 422 (1985); cf. Garrison Retirement Home Corp. v. Hancock, 484 So.2d 1257 (Fla. 4th DCA 1985) (retirement home owed duty to warn worker of senile resident's dangerous propensities for operating motor vehicle). See generally Note, The Psychotherapist's Duty to Warn, 40 Fed'n of Ins. & Couns. Q. 406 (1990); Hulteng, Commentary  The Duty to Warn or Hospitalize: The New Scope of Tarasoff Liability in Michigan, 67 U.Det. L.Rev. 1 (1989). I am content to emphasize only the basic premise of this authority: that there is every good reason in the protection of human life and safety to create and enforce the duty to warn, and no nearly sufficient policy or other ground to deny it. As Tarasoff eloquently states:
Our current crowded and computerized society compels the interdependence of its members. In this risk-infested society we can hardly tolerate the further exposure to danger that would result from a concealed knowledge of the therapist that his patient was lethal. If the exercise of reasonable care to protect the threatened victim requires the therapist to warn the endangered party or those who can reasonably be expected to notify him, we see no sufficient societal interest that would protect and justify concealment. The containment of such risks lies in the public interest.
Tarasoff, 17 Cal.3d at 442, 131 Cal. Rptr. at 27-28, 551 P.2d at 347-48.
A mass of objections has been raised to the proposed "duty." Seemingly, all of them have been accepted by the majority. In my view, none of them  again for reasons already stated in the decisions  have merit. Treating them very briefly, however, it may be said:
1. The "finding" that there is no duty is nothing more than a tautology. The court finds no duty because it thinks there should be no liability; it does not conclude that there is no liability because it has "found" that there is no duty. See Tarasoff, 17 Cal.3d at 425, 131 Cal. Rptr. at 14, 551 P.2d at 334; Carpenter v. City of Los *453 Angeles, 230 Cal. App.3d 923, 281 Cal. Rptr. 500 (1991); W. Prosser, Law of Torts § 53 (4th ed. 1971) ("The statement that there is or is not a duty begs the essential question  whether the plaintiff's interests are entitled to legal protection against the defendant's conduct."). I think to the contrary of the court's view.
2. The fact that the psychiatrist has no ability to "control" his patient is a straw argument which has nothing to do with this case. Dr. Burglass's liability is not based on any responsibility for the actions of his homicidal patient, but upon his own negligent failure to conduct himself as a reasonable member of the community by giving warning to a person in danger from a known peril.
3. The horrible that the dubious nature of psychiatric predictability might impose liability for consequences which were not reasonably foreseeable is likewise without foundation. As the cases recognize, liability should be imposed only when, on the basis of professional standards, the psychiatrist actually knows or should know that the threat is a viable one. See Littleton, 39 Ohio St.3d at 86, 529 N.E.2d at 449; § 455.2415, Fla. Stat. (1989).[14] Our adoption of that rule would eliminate the majority's self-created fear on that ground.
4. Along the same lines, the majority expresses its concern over the supposed effect of a warning rule upon the freedom and confidentiality of the psychiatric process. But we are not told, and it is difficult to imagine, how a warning to a potential victim or the authorities that one's patient has made a genuine threat, would compromise either of these principles. Moreover, it has been widely held that the psychiatrist-patient privilege is subject to a clear exception when the welfare of others makes it "necessary, in order to protect the patient or the community from imminent danger, to reveal confidential information disclosed by the patient. [Reprinted in 130 Am.Jur.Psych. 1058, at 1063 (1973)]." McIntosh, 168 N.J. Super. at 491, 403 A.2d at 512 (citing Principles of Medical Ethics, § 9 (1957)).
5. Finally, I wholly disagree with the conclusion that "section 455.2415 has no effect on this case." At 451. Notwithstanding that the statute did not formally become effective until February 8, 1988, I think its enactment is determinative to the contrary of the court's decision.
(a) In the first place, the statute has rendered the public policy grounds of the majority decision  that is, the desire to encourage facility of communication between therapist and patient and to preserve the confidentiality of those remarks  completely meaningless. The legislature has decided that, now and in the future, a warning may be communicated notwithstanding those concerns. While the effect of a judicial decision upon the day to day actions of real people is subject to grave doubt in almost every instance, see South Florida Blood Service v. Rasmussen, 467 So.2d 798, 804-07 (Fla. 3d DCA 1985) (Schwartz, C.J., dissenting), aff'd, 500 So.2d 533 (Fla. 1987), it is clear that the decision in this case cannot serve the court's independent purposes because, for better or worse, the legislature has disagreed with them.
*454 (b) The later enactment of section 455.2415 has or should have an even more profound effect on our decision. In writing the common law of our state in this field, the court, like all courts in similar situations, has adopted a principle which it believes to be in accordance with sound public policy. But it is apodictic that it is ordinarily for the legislature to determine what policy is desirable and how it should be reflected in the law. See 10 Fla.Jur.2d Constitutional Law § 147 (1979). When the legislature has made such a determination, its view, even if not technically binding, should be entitled to great respect and weight by a court seeking to resolve the same problem. See Van Beeck v. Sabine Towing Co., 300 U.S. 342, 349-51, 57 S.Ct. 452, 455-56, 81 L.Ed. 685, 690 (1937) (per Cardozo, J., "The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed. Its intimation is clear enough in the statutes now before us that their effects shall not be stifled, without the warrant of clear necessity, by the perpetuation of a policy which now has had its day.") (footnotes omitted); Singer, Norman J., 2A Sutherland Statutory Construction § 56.02 (4th ed. rev. 1984); Dade County Medical Ass'n v. Hlis, 372 So.2d 117, 119 (Fla. 3d DCA 1979) ("The non-applicability of the statutory privilege does not mean, however, that we may or should ignore the considerations of public policy which informed the enactment of the statute and of which we have spoken."). This approach finds special applicability when, as here, the precise issue is the subject of a statute which becomes effective only after the date in question. E.g., United States v. Sweet, 245 U.S. 563, 38 S.Ct. 193, 62 L.Ed. 473 (1918). In other words, the legislature has already considered the issue before us and has decided that considerations of certainty and secrecy of doctor-patient communications are not served or outweighed when the conditions described in the statute are fulfilled. We should defer to the judgment of the branch of our government which has the primary duty, and the resources, to render that judgment.
Indeed, in following the principle of legislative deference to which I have just referred, I would adopt the statutory provision as the statement of the circumstances under which the duty to warn arises. Such a rule would, at the same time, reflect the will of the legislature and overcome any objections to a broader or more uncertain standard. See Tarasoff v. Regents of Univ. of Cal., 17 Cal.3d at 438, 131 Cal. Rptr. at 25, 551 P.2d at 345; McIntosh, 168 N.J. Super. at 482-491, 403 A.2d at 508-512; see also Littleton, 39 Ohio St.3d at 96-101, 529 N.E.2d at 458-461. In other words, I would hold that liability would arise when a
patient has made an actual threat to physically harm an identifiable victim or victims;
and a reasonable practitioner would make
a clinical judgment that the patient has the apparent capability to commit such an act and that it is more likely than not that in the near future the patient will carry out that threat [;]
and nonetheless fails to
disclose [the] patient communications to the extent necessary to warn any potential victim or to communicate the threat to a law enforcement agency.
§ 455.2415, Fla. Stat. (1989).
It is true that the amended complaint, as presently drafted, does not conform to this standard. However, because the plaintiffs could not have previously anticipated the result in this case of first impression, they should now be given leave to amend the complaint accordingly, if they can conscientiously do so. See Jennings v. Dade County, 589 So.2d 1337 (Fla. 3d DCA 1991) [16 FLW D2059]; Gabriel v. Tripp, 576 So.2d 404 (Fla. 2d DCA 1991).
Although the thought was expressed in a similarly losing effort, I continue to believe that "a common law duty exists when a court says it does because it thinks it should." Robertson v. Deak Perera, Inc., 396 So.2d 749, 752 (Fla. 3d DCA 1981) (Schwartz, J., dissenting), review denied, 407 So.2d 1105 (Fla. 1981). Rather than some, like the majority, who sound "the loud alarum bells," parade the horribles *455 and ask why the duty to warn should exist, I think, bearing in mind the demands of common decency and the protection of life, that we should ask why it should not. There is no reason why not, and I therefore dissent.
BASKIN, FERGUSON and LEVY, JJ., concur.
NOTES
[1] Tarasoff v. Regents of University of California, 17 Cal.3d 425, 131 Cal. Rptr. 14, 551 P.2d 334 (1976).
[2] The court thanks the Florida Department of Health & Rehabilitative Services, the Academy of Florida Trial Lawyers, and the Florida Defense Lawyers Association  the Amici Curiae that appeared in this case  for their valuable assistance.
[3] The criminal case stemming from this incident is Blaylock v. State, 537 So.2d 1103 (Fla. 3d DCA 1988), rev. denied, 547 So.2d 1209 (Fla. 1989).
[4] In this court, plaintiffs assert only that Dr. Burglass had a duty to warn Boynton, his family, or the police that Blaylock posed a serious threat to Boynton's safety.
[5] For the purpose of deciding this appeal, we take as true all facts pled in the complaint, and thus assume that Blaylock made an actual, specific threat against Wayne Boynton. See Connolly v. Sebeco, 89 So.2d 482 (Fla. 1956).
[6] For an overview of decisions from other jurisdictions that have addressed Tarasoff, see generally Annotation, Liability of One Treating Mentally Afflicted Patient for Failure to Warn or Protect Third Persons Threatened by Patient, 83 A.L.R.3d 1201 (1978 & Supp. 1990).
[7] In Tarasoff, the California Supreme Court held that "[w]hen a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger." 131 Cal. Rptr. at 20, 551 P.2d at 340. Four years later, the California Supreme Court narrowed the scope of its holding in Tarasoff, and held that a county's duty to warn of the imminent release from confinement of a dangerous and violent individual "depends upon and arises from the existence of a prior threat to a specific identifiable victim." Thompson v. County of Alameda, 27 Cal.3d 741, 167 Cal. Rptr. 70, 80, 614 P.2d 728, 738 (1980).
[8] Although we use the term "psychiatrist" throughout this opinion, our decision today applies equally to psychologists, psychotherapists, and other mental health practitioners.
[9] Plaintiff's failure to allege that Dr. Burglass had the ability to control Blaylock's behavior also goes to the issue of proximate cause. If Dr. Burglass lacked the ability to control Blaylock's behavior, his failure to control cannot be said to be the proximate cause of the criminal act. See Hasenei, 541 F. Supp. at 1012, n. 22.
[10] For a useful discussion of social science methodology and its appropriate reception in the courts, see generally J. Monahan & L. Walker, Social Science in Law: Cases & Materials (2d Ed. 1990).
[11] We also affirm the denial of plaintiffs' motion to strike defendant's motion to dismiss.
[12] We certify to the Supreme Court of Florida that the question resolved in this case is one of great public importance.
[13] This fact is well-known to us. See Blaylock v. State, 537 So.2d 1103 (Fla. 3d DCA 1988), review denied, 547 So.2d 1209 (Fla. 1989).
[14] Communications confidential; exceptions.  Communications between a patient and a psychiatrist, as defined in s. 394.455(2)(e), shall be held confidential and shall not be disclosed except upon the request of the patient or his legal representative. Provision of psychiatric records and reports shall be governed by s. 455.241. Notwithstanding any other provisions of this section or s. 90.503, where:
(1) A patient is engaged in a treatment relationship with a psychiatrist.
(2) Such patient has made an actual threat to physically harm an identifiable victim or victims; and
(3) The treating psychiatrist makes a clinical judgment that the patient has the apparent capability to commit such an act and that it is more likely than not that in the near future the patient will carry out that threat.
The psychiatrist may disclose patient communications to the extent necessary to warn any potential victim or to communicate the threat to a law enforcement agency. No civil or criminal action shall be instituted, and there shall be no liability on account of disclosure of otherwise confidential communications by a psychiatrist in disclosing a threat pursuant to this section.