# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**ANDREW POLLACK** and **SHARA KAPLAN** as Co-Personal
Representatives of the Estate of **MEADOW POLLACK,** Decedent,
Appellants,

v.

**NIKOLAS CRUZ, SCOT PETERSON, ANDREW MEDINA,** The Estate of
**LYNDA CRUZ, JAMES SNEAD, KIMBERLY SNEAD, HENDERSON
BEHAVIORAL HEALTH, INC.,** and **SOUTH COUNTY MENTAL HEALTH
CENTER, INC.,**
Appellees.

No. 4D19-1512

[May 27, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Patti Englander Henning, Judge; L.T. Case No. 18-9607 (26).

Joel S. Perwin of Joel S. Perwin, P.A., Miami, David W. Brill and Joseph J. Rinaldi, Jr. of Brill & Rinaldi, The Law Firm, Weston, for appellants.

Eric J. Netcher and Joshua B. Walker of Walker, Revels, Greninger & Netcher, PLLC, Orlando, for appellee, Henderson Behavioral Health, Inc.

GROSS, J.

On February 14, 2018, Nikolas Cruz shot and killed seventeen people and wounded seventeen others at Marjory Stoneman Douglas High School.[1]

---

[1] As of the date of this opinion, Cruz has not been convicted of criminal charges. Since this is an appeal from a motion to dismiss, we state the facts as they were pleaded in the complaint, accepting the allegations of the complaint as true and considering them in the light most favorable to the appellants, the non-moving parties whose case was dismissed. *See Almarante v. Art Inst. of Fort Lauderdale, Inc.*, 921 So. 2d 703, 704 (Fla. 4th DCA 2006).

Appellants Andrew Pollack and Shara Kaplan are co-representatives of the estate of Meadow Pollack, a student killed in the shooting. Appellee Henderson Behavioral Health, Inc. ("Henderson") is a mental health facility that provided outpatient mental health services to Cruz at various times between 2009 and December 2016.

Appellants sued Henderson and other defendants. They alleged, among other things, that Henderson was negligent for failing to prevent Cruz from being mainstreamed into the public school system and failing to warn of Cruz's dangerous propensities. The trial court dismissed the complaint as to Henderson. We affirm the dismissal because Henderson violated no legal duty that extended to cover the victims in the shooting.

### *Factual Background*

Henderson first began providing behavioral services to Cruz in October 2009. Henderson provided therapy sessions to Cruz over the course of two months, and his case was closed in December 2009.

Between January 2013 and August 2015, Henderson provided periodic services to Cruz for his anger issues at home and school. In February 2014, Cruz enrolled in Cross Creek, a school for students with emotional and behavioral disorders. Henderson participated in meetings with school officials to discuss Cruz's behavioral issues, his current diagnosis, and his medication management. Henderson also participated in meetings to discuss mainstreaming Cruz into a regular public school.

In January 2016, the School Board of Broward County began the process of mainstreaming Cruz into the public school system, and Cruz enrolled as a full-time student at Douglas High School.

In February 2016, the police received a report that Cruz had posted a photograph of himself with guns on Instagram, with the suggestion that he planned "to shoot up the school." A deputy responded to the house, found that Cruz had knives and a BB gun, and subsequently passed that information on to the school resource officer.

In September 2016, Cruz was suspended from school after getting into a fight following a break-up with his girlfriend. That same month, Henderson responded to Cruz's home after receiving a phone call from Cruz's mother that Cruz was verbally aggressive and punching holes in the home. Henderson also received phone calls from school guidance counselors who asked Henderson to visit with Cruz at his residence and

- 2 -

expressed concerns that Cruz was going to hurt himself and others. A student reported that Cruz, while depressed, had cut himself and ingested gasoline in an attempt to kill himself. It was determined that Cruz had used a pencil sharpener to scratch his arm. The student further stated that Cruz wanted to buy a gun for hunting. After meeting with Cruz, counselors from Henderson advised police that Cruz "was not a risk to harm himself or anyone else" because he was on a treatment plan for ADHD, depression, and autism.

The Florida Department of Children and Families opened an investigation into Cruz. The Department closed its investigation two months later upon concluding that Cruz took his medication regularly, that he kept his appointments, and that his "final level of risk [was] low."

Henderson provided therapy sessions to Cruz from October 2016 until December 2016, at which point Cruz, who was then eighteen, stated he was no longer interested in continuing with the therapy sessions. The case was closed on December 27, 2016, and Henderson had no further involvement with Cruz thereafter.

The year after Cruz ended his treatment with Henderson was a turbulent one. In January 2017, Cruz was suspended from school for "low assault" and referred for a threat assessment. In February 2017, Cruz was expelled from school after fighting and told not to return. That same month, Cruz purchased the AR-15 rifle that he would use in the school shooting.

On November 1, 2017, Cruz's mother died after a brief illness. That same day, a relative of Cruz called the police to report that Cruz had weapons and to request that they be removed. Following his mother's death, Cruz resided at different locations.

In January 2018, the FBI received a report from a person close to Cruz who was worried about him "getting into a school and just shooting the place up." The caller reported concerns about Cruz's "gun ownership, desire to kill people, erratic behavior, and disturbing social media posts, as well as the potential of him conducting a school shooting."

On February 14, 2018—more than a year after discontinuing services with Henderson—Cruz went to Douglas High School with an AR-15 rifle and killed seventeen students and teachers and wounded seventeen others.

Henderson moved to dismiss appellants' second amended complaint, arguing that, under Florida law, a mental health provider has no legal duty to warn or protect others from the future possible harm that might be caused by a voluntary outpatient, especially when the patient has long since discontinued his care with the mental health provider. Following a hearing, the circuit court dismissed the second amended complaint with prejudice as to Henderson.

### *Standard of Review*

"[W]hether a complaint is sufficient to state a cause of action is an issue of law subject to *de novo* review." *Vaughn v. Boerckel*, 20 So. 3d 443, 445 (Fla. 4th DCA 2009). While we are limited to the four corners of the complaint "and must accept all allegations as true, we are 'not required to defer to the trial court's conclusions regarding the legal sufficiency of the allegations.'" *Knight v. Merhige*, 133 So. 3d 1140, 1144 (Fla. 4th DCA 2014) (quoting *Aguila v. Hilton, Inc.*, 878 So. 2d 392, 395 (Fla. 1st DCA 2004)) (internal citation omitted).

### *Discussion*

Although a negligence cause of action is comprised of four elements, the focus here is on one—the existence of a "duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (citation omitted). With regard to this element, whether a duty exists is a question of law for the court. *Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1110 (Fla. 2005). Crucial to the duty inquiry is "whether the defendant's conduct foreseeably create[s] a broader 'zone of risk' that poses a general threat of harm to others." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992).

"A legal duty requires more than just foreseeability alone. A duty requires one to be in a position to 'control the risk.'" *Surloff v. Regions Bank*, 179 So. 3d 472, 476 (Fla. 4th DCA 2015) (internal citation omitted). "A traditional analysis of a defendant's liability in negligence for the criminal acts of another links the existence of a legal duty to the defendant's special relationship to the injured party or to the defendant's ability to control some aspect of the criminal act." *Knight*, 133 So. 3d at 1144.

In this case, appellants contend that their second amended complaint adequately alleged that Henderson had a duty to the students and

administrators at the high school to (1) prevent Cruz from being mainstreamed into the public school system and (2) warn of Cruz's dangerous propensities.

However, appellants' theories of liability are undermined by Florida law establishing that a criminal attack on third parties by an outpatient mental health patient is not within the foreseeable zone of risk created by the mental health provider.

Florida law does not recognize a duty of mental health providers to warn third parties that a patient may be dangerous. This is because of "the inherent unpredictability associated with mental illnesses and the 'near-impossibility of accurately or reliably predicting dangerousness.'" *Mental Health Care, Inc. v. Stuart*, 909 So. 2d 371, 374 (Fla. 2d DCA 2005) (quoting *Boynton v. Burglass*, 590 So. 2d 446, 450 (Fla. 3d DCA 1991)).

For example, in *Boynton*, the parents of a murder victim sued a psychiatrist for malpractice, alleging that the psychiatrist's voluntary outpatient shot and killed their son because of the psychiatrist's negligence. 590 So. 2d at 447. The parents alleged that the psychiatrist (1) failed to hospitalize the patient; (2) failed to warn the victim, the victim's family, or the police that the patient was violence-prone and had threatened serious harm to the victim; and (3) failed to prescribe the proper medications for the patient. *Id.* The trial court dismissed the complaint with prejudice upon the psychiatrist's motion for failure to state a claim for relief. *Id.*

On appeal, the Third District affirmed, holding that there was no duty on the part of the psychiatrist to warn or protect third parties from the criminal acts of a patient:

> To impose a duty [on a psychiatrist] to warn or protect third parties would require the psychiatrist to foresee a harm which may or may not be foreseeable, depending on the clarity of his crystal ball. Because of the inherent difficulties psychiatrists face in predicting a patient's dangerousness, psychiatrists cannot be charged with accurately making those predictions and with sharing those predictions with others.

*Id.* at 450. The court found that imposing such a duty is "neither reasonable nor workable and is potentially fatal to effective patient-therapist relationships." *Id.* at 448.

- 5 -

In reaching its decision, the court noted that psychiatry represents the ultimate "grey area . . . particularly with regard to issues of foreseeability and predictability of future dangerousness." *Id.* (citation omitted). Recognizing that "psychiatry is, at best, an inexact science," the Third District stated that "courts should be reluctant to impose liability upon psychiatrists," noting that psychiatrists "disagree widely and frequently on what constitutes mental illness, on the appropriate diagnosis to be attached to given behavior and symptoms, on cure and treatment, and on the likelihood of future dangerousness." *Id.* at 449.

Florida courts have continuously applied *Boynton*'s reasoning to hold that mental health providers have no duty to warn or protect third parties from the criminal acts of their patients. *See, e.g., Stuart*, 909 So. 3d at 371 (case manager at mental health facility who provided non-custodial mental health care for a client had no duty to warn staff at psychiatric hospital that client may be dangerous when the client was admitted to the hospital); *Green v. Ross*, 691 So. 2d 542, 542 (Fla. 2d DCA 1997) (mental health worker had no duty "to warn a potential victim when a patient presents a serious threat of violence to that potential victim"); *see also Tuten v. Fariborzian*, 84 So. 3d 1063, 1068 (Fla. 1st DCA 2012) (discussing *Boynton* and holding that "because the future behavior of a psychiatric patient is unknowable, under Florida law risk of harm is not foreseeable and therefore no duty exists to lessen the risk or protect others from the type of risk which a psychiatric patient might pose").

Notwithstanding *Boynton* and its progeny, appellants point to *Pate v. Threlkel*, 661 So. 2d 278 (Fla. 1995); however, that case cannot be stretched to cover the liability of a mental health provider to third parties. In *Pate*, the Florida Supreme Court recognized that a doctor might owe a duty of care to a patient's children to warn the patient of a genetic condition that the children could have inherited. *Id.* at 279. Involving a precise and identifiable risk, *Pate* dealt with a far narrower scope of duty than the one here at issue. The Court described that duty as being "obviously for the benefit of certain identified third parties," whose existence is known to the physician. *Id.* at 282.

Given the unpredictable nature of a mental health patient's future behavior, mental health providers such as Henderson are not legally tasked with identifying, advising, or warning third parties when the patient has made only a general threat to harm others, as the concurring opinion demonstrates in its discussion of the legislative response to this tragedy.

We consider the other arguments raised by appellants to impose liability to be without merit. Henderson's participation in discussions with

school authorities and others did not give rise to an actionable duty owed to the plaintiffs.

Appellants contend that by making a recommendation to the School Board regarding whether Cruz should be mainstreamed, Henderson "undertook the duty to protect the administration, teachers, and students at Marjory Stoneman Douglas High School . . . from a variety of threats against unreasonable risk of physical harm, including those posed by Cruz and it was required to exercise reasonable care in the fulfillment of that duty."

Under Florida's "undertaker's doctrine," "[w]henever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service—i.e., the 'undertaker'—thereby assumes a duty to act carefully and to not put others at an undue risk of harm." *Johnson*, 873 So. 2d at 1186. "Voluntarily undertaking to do an act that if not accomplished with due care might increase the risk of harm to others or might result in harm to others due to their reliance upon the undertaking confers a duty of reasonable care, because it thereby 'creates a foreseeable zone of risk.'" *Union Park Mem'l Chapel v. Hutt*, 670 So. 2d 64, 67 (Fla. 1996) (quoting *McCain*, 593 So. 2d at 503).

As adopted by our supreme court, this doctrine is codified by Restatement (Second) of Torts § 324A, which states as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Johnson*, 873 So. 2d at 1186.

Here, even if Henderson played a "key role" in the decision to mainstream Cruz by consulting with the School Board and making a recommendation, that conduct did not give rise to a duty to protect the administration, teachers, and students at the high school from harm, especially when the decision to mainstream Cruz was ultimately up to the School Board, not Henderson. The undertaker's doctrine does not apply in this case to impose liability on Henderson.

Likewise, the outcome is unchanged by appellants' allegations regarding a special relationship between Henderson and students at the high school. "Generally, there is no duty to control the conduct of a third person to prevent [that person] from causing physical harm to another." *Carney v. Gambel*, 751 So. 2d 653, 654 (Fla. 4th DCA 1999). An exception to the general rule exists where the defendant has a "special relationship" with the plaintiff. *Knight*, 133 So. 3d at 1145. These "relationships are protective by nature, requiring the defendant to guard his charge against harm from others." *Id.* (citation omitted). "[E]xamples of recognized special relationships include businesses toward their customers, employers toward their employees, jailers toward their prisoners, hospitals toward their patients, and schools toward their pupils." *Id.*

In this case, although there may be a special relationship between Henderson and Cruz and separately between the high school and its students, there is no special relationship between a student patient's mental health provider and other students who attend school with the patient.

Finally, as the Third District recognized in *Boynton*, public policy reasons weigh against a ruling that Henderson owed a legal duty to appellants. "The issue of legal duty in a negligence case asks 'whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.'" *Knight*, 133 So. 3d at 1149 (citation omitted). This court has confirmed that "[c]onsiderations of public policy are appropriate in determining whether a negligence cause of action will lie." *Id.* at 1150. As we explained:

> Finding that a legal duty exists in a negligence case involves the public policy decision that a defendant should bear a given loss, as opposed to distributing the loss among the general public. A legal duty is an allocation of risk determined by balancing the foreseeability of harm, in light of all the circumstances, against the burden to be imposed.

*Id.* at 1149–50 (quoting *Biglen v. Fla. Power & Light Co.*, 910 So. 2d 405, 409 (Fla. 4th DCA 2005)) (internal quotations, alterations, and citations omitted).

In this case, a holding that Henderson owed a legal duty to protect or warn students that attended the same school as one of its patients would not only undermine effective patient-therapist relationships, but it also would discourage mental health professionals from providing mental health services to students. It is difficult to predict any human being's future conduct. Unlike scientific disciplines firmly grounded in mathematics, psychology is not a precise science, so courts should be cautious about expanding liability beyond the therapist-patient relationship.

*Affirmed.*

FORST, J., concurs.
GERBER, J., concurs specially with opinion.

GERBER, J., concurring specially.

In addition to the cited cases holding no common law duty exists for mental health providers to warn a potential victim or communicate a potential threat to a law enforcement agency, no Florida statute before this tragedy had imposed such legal duties upon mental health providers, nor has any Florida statute ever imposed liability upon mental health providers who have failed to take such preemptive actions.

For example, in the nearly twenty years before this tragedy occurred, section 456.059, Florida Statutes, provided:

> Communications between a patient and a psychiatrist, as defined in s. 394.455, shall be held confidential and shall not be disclosed except upon the request of the patient or the patient's legal representative. Provision of psychiatric records and reports shall be governed by s. 456.057. Notwithstanding any other provision of this section or s. 90.503, where:
>
> (1) A patient is engaged in a treatment relationship with a psychiatrist;
>
> (2) Such patient has made an actual threat to physically harm an identifiable victim or victims; and

(3) The treating psychiatrist makes a clinical judgment that the patient has the apparent capability to commit such an act and that it is more likely than not that in the near future the patient will carry out that threat,

the psychiatrist ***may disclose*** patient communications to the extent necessary to warn any potential victim or to communicate the threat to a law enforcement agency. No civil or criminal action shall be instituted, and there shall be no liability on account of disclosure of otherwise confidential communications by a psychiatrist in disclosing a threat pursuant to this section.

§ 456.059, Fla. Stat. (2000) (emphasis added).

After this tragedy occurred, section 456.059 was amended to impose a legal duty upon psychiatrists to disclose patient communications to a law enforcement agency to the extent necessary to communicate "a specific threat to cause serious bodily injury or death to an identified or a readily available person." However, that amendment still did not impose a legal duty upon psychiatrists to warn any potential victim, nor imposed any liability upon psychiatrists who fail to disclose patient communications to potential victims or law enforcement. The amended statute provides:

Communications between a patient and a psychiatrist, as defined in s. 394.455, shall be held confidential and **may** ~~shall~~ not be disclosed except upon the request of the patient or the patient's legal representative. Provision of psychiatric records and reports **are** ~~shall be~~ governed by s. 456.057. Notwithstanding any other provision of this section or s. 90.503, **when** ~~where~~:

(1) A patient is engaged in a treatment relationship with a psychiatrist;

(2) Such patient has **communicated to the psychiatrist a specific threat to cause serious bodily injury or death to an identified or a readily available person** ~~made an actual threat to physically harm an identifiable victim or victims~~; and

(3) The treating psychiatrist makes a clinical judgment that the patient has the apparent **intent and ability to imminently or immediately carry out such threat** ~~capability to commit such an act and that it is more likely~~

- 10 -

~~than not that in the near future the patient will carry out that threat~~,

the psychiatrist may disclose patient communications to the extent necessary to warn any potential victim ~~or~~ **and must disclose patient communications to the extent necessary** to communicate the threat to a law enforcement agency. **A law enforcement agency that receives notification of a specific threat under this subsection must take appropriate action to prevent the risk of harm, including, but not limited to, notifying the intended victim of such threat or initiating a risk protection order. A psychiatrist's disclosure of confidential communications when communicating a threat pursuant to this section may not be the basis of any legal action or criminal or civil liability against the psychiatrist** ~~No civil or criminal action shall be instituted, and there shall be no liability on account of disclosure of otherwise confidential communications by a psychiatrist in disclosing a threat pursuant to this section~~.

Laws 2019, c. 2019-134, § 4 (eff. July 1, 2019) (bold and underline denote additions; strikethroughs denote deletions).

Chapter 2019-134 made similar amendments to other mental health related statutes, but none of those amendments have imposed liability upon mental health providers who fail to communicate a threat to potential victims or law enforcement either. *See* § 394.4615, Fla. Stat. (2019) (service providers under the Baker Act); § 490.0147, Fla. Stat. (2019) (psychologists); § 491.0147, Fla. Stat. (2019) (clinical social workers, marriage and family therapists, mental health counselors, psychotherapists, and social workers).

Thus, despite the tragedy from which this case arises, it would be improper for this court to issue an after-the-fact decision imposing a legal duty and potential liability upon Henderson's inactions in this case. *See Boynton v. Burglass*, 590 So. 2d 446, 449 (Fla. 3d DCA 1991) ("[I]mposition of such a duty must be reasonable, and must give the parties on whom the duty is imposed fair notice of what is required of them.").

While this explanation provides no solace to this tragedy's many surviving victims, or the seventeen families who continue to endure indescribable grief, this is the decision which we must render in this case.

\* \* \*

*Not final until disposition of timely filed motion for rehearing.*