761 So.2d 355 (2000)
Douglas BIRCH, a minor, by and through his next friend, parent and natural guardian, Donna BIRCH and Donna Birch, individually and Basil Birch, individually, Appellants,
v.
Miguel A. ALBERT, M.D. and Appellees.
No. 3D98-416.
District Court of Appeal of Florida, Third District.
March 22, 2000.
Rehearing Denied July 12, 2000.
*356 Robert J. Dickman, Coral Gables; Hersch & Talisman, and Patrice A. Talisman, Miami, for appellants.
Baron and Cliff, and Richard Baron, and Nancy J. Cliff, Miami, for appellees.
Before GERSTEN, FLETCHER, and SORONDO, JJ.
GERSTEN, J.
Plaintiffs appeal an order granting a new trial in favor of the defendants in a medical malpractice action based upon juror non-disclosure. The defendants cross appeal claiming a new trial is required because a jury instruction was misleading and based upon improper comments during closing argument. We reverse on the main appeal finding that a new trial is not warranted because the juror's failure to disclose a previously dismissed collection action was not material, and because the failure to disclose was due to the defendant's lack of diligence. The cross appeal is affirmed.
Basil Birch, his wife, Donna, and son Douglas (hereafter collectively referred to as "plaintiffs"), sued Dr. Miguel A. Albert, his professional association, (hereafter collectively referred to as "defendant"), and Hialeah Hospital for medical malpractice asserting that Douglas was born with cerebral palsy as a direct result of birth trauma caused by the defendant's negligence.[1] After a six day trial in September of 1998, the jury returned a verdict in favor of the plaintiffs. Douglas was awarded $4,174,000 for past and future medical expenses, $1,750,000 for future wage loss, and $10,000,000 for past and future pain and suffering, Donna and Basil received $1,500,000 each for past and future loss of their son's companionship and society. The total award against the defendant was $18,924,000.
After the verdict was returned, the defendant moved for new trial on several grounds, including the claim that one or more of the jurors had misrepresented and/or denied involvement in prior legal proceedings. The only evidence presented to support this assertion was the fact that in February of 1997, juror Maria Ferrer-Young ("Ferrer-Young") had been sued in county court for non-payment of a $1,000 anesthesiologist bill.[2]
Since this information was not disclosed during voir dire, the trial judge held that she was constrained by this Court's decision in Wilcox v. Dulcom, 690 So.2d 1365 (Fla. 3d DCA 1997) to grant a new trial on *357 the ground of juror misconduct.[3] The trial judge explained that, but for Wilcox, she would have denied the motion because the non-disclosure did not deprive the defendants of a fair and impartial trial.[4]
In Wilcox, this Court applied the well-established "three part test" in finding that a juror's concealment of information during voir dire warranted a new trial. See Wilcox v. Dulcom, 690 So.2d at 1366. The three part test requires a showing that: (1) the information is relevant and material, (2) the juror concealed the information during questioning, and (3) the jurors failure to disclose the information was not attributable to lack of due diligence on the part of the complaining party. See De La Rosa v. Zequeira, 659 So.2d 239 (Fla. 1995); Mazzouccolo v. Gardner, McLain & Perlman, M.D., P.A., 714 So.2d 534 (Fla 4th DCA 1998).
After reviewing the voir dire proceedings in the instant case, we conclude the three part test was not met because Ferrer-Young did not conceal material information and the defendants were not diligent. For reasons discussed in further detail below, we clarify and distinguish Wilcox from the facts of this case.
During voir dire, the trial court initially addressed scheduling issues and asked each potential juror if they had any close relatives who were doctors or otherwise worked in the medical field. Potential juror Ferrer-Young stated she might have a scheduling problem with an important doctor's appointment later in the week, and disclosed that her grandfather had been a cardiologist.
The trial court then questioned the potential jurors as to whether they had ever been a party to a lawsuit. During the questioning of two potential jurors prior to Ferrer-Young, the trial court described the litigation history it sought as "like arising out of a car accident or anything like that."[5] All the potential jurors responded only by mentioning personal injury suits and a dissolution/custody action.
When Ferrer-Young was asked if she had been a party to a lawsuit, she responded that she had been injured in a workers' compensation case, but that "it was not a suit." The trial judge immediately followed-up by confirming that Ferrer-Young was the "injured party" and sought an explanation of her injuries. No explanation *358 of "lawsuit" was given at that time.[6] Ferrer-Young was never asked by the court, plaintiffs or defendants whether she had any other experience with lawsuits. Moreover, the trial court had earlier limited this inquiry with another juror by explaining it was looking for lawsuits "like arising out of a car accident or anything like that."
Information is considered concealed for purposes of the three part test where the information is "squarely asked for" and not provided. See Mazzouccolo v. Gardner, McLain & Perlman, M.D., P.A., 714 So.2d at 536; Bernal v. Lipp, 580 So.2d 315, 316 (Fla. 3d DCA 1991); see also Mitchell v. State, 458 So.2d 819 (Fla. 1st DCA 1984)(in order for a juror to be held to have concealed information, the question propounded must be straight-forward and not reasonably susceptible to misinterpretation). Here, Ferrer-Young squarely answered the asked questions and there was no follow-up inquiry requesting information on her entire litigation history.
The fact that the defendants did not follow up on the information Ferrer-Young provided is significant for two reasons. First, because a juror's answer cannot constitute concealment, where the juror's response to a question about litigation history is ambiguous, and counsel does not inquire further to clarify that ambiguity.[7]See Taylor v. Public Health Trust of Dade County, 546 So.2d 733 (Fla. 3d DCA), review denied, 557 So.2d 867 (Fla.1989); State v. McGough, 536 So.2d 1187 (Fla. 2d DCA 1989).
And second, because defense counsel did not diligently discover this information. Given ample opportunity to do so, defense counsel failed to inquire further about Ferrer-Young's litigation history, or follow-up on her responses about the workers' compensation claim.[8] Therefore, any failure to disclose additional prior legal proceedings was due to the defendant's lack of due diligence and thus cannot constitute active concealment on the part of the juror. See State v. McGough, 536 So.2d at 1189; Blaylock v. State, 537 So.2d 1103 (Fla. 3d DCA 1988), review denied, 547 So.2d 1209 (Fla.1989); Schofield v. Carnival Cruise Lines, Inc., 461 So.2d 152 (Fla. 3d DCA 1984), review denied, 472 So.2d 1182 (Fla.1985).
Finally, here, we conclude that the materiality prong of the three part test has not been met. The test is not simply whether information is relevant and material in general, but whether it is "relevant and material to jury service in the case." De La Rosa v. Zequeira, 659 So.2d at *359 241(emphasis added).[9] Materiality must be analyzed on a case-by-case basis, and we clarify that Wilcox does not mandate an automatic new trial whenever there has been a nondisclosure of litigation information. Based upon the facts and circumstances of this case, we find the prior lawsuit was not material. See Ford Motor Company v. D'Amario, 732 So.2d 1143 (Fla. 2d DCA), review granted, 743 So.2d 508 (Fla.1999).[10]
In conclusion, this case did not meet the three part test and a new trial based upon juror nondisclosure was not warranted. See Tejada v. Roberts, 760 So.2d 960 (Fla. 3d DCA 2000). The defendant's remaining contentions on the cross appeal similarly lack merit and also do not warrant a new trial. Accordingly, we reverse and remand for entry of an order reinstating the jury verdict.
Reversed and remanded with instructions.
FLETCHER, J., concurs.
SORONDO, J. (concurring)
I agree with and join Judge Gersten's well-reasoned majority opinion. I write separately to further discuss the recurring issue under review.
The issue of jury non-disclosure has become the losing litigant's trump card to be played immediately after the return of a trial jury's adverse verdict. This practice has led to a serious undermining of the integrity of jury verdicts and the finality, at least at the trial level, which they are supposed to bring to the litigants.
In Tejada v. Roberts, 760 So.2d 960 (Fla. 3d DCA 2000), this Court held that:
[T]he time to check the jurors' names against the clerk's lawsuit index is at the conclusion of jury selection. If a party does not request the opportunity to make the record search, then that litigant will not be heard to complain later about nondisclosure of information which could have been disclosed by reference to the clerk's index.
Because no such request was made in this case, the defense cannot "be heard to complain" about potential juror Ferrer-Young's nondisclosure. Although the issue was not properly preserved for appellate review, I nevertheless feel compelled to comment on one of the problems presented by this issue.
In De La Rosa v. Zequeira, 659 So.2d 239, 241 (Fla.1995), the Florida Supreme Court stated:
In determining whether a juror's nondisclosure of information during voir dire warrants a new trial, courts have generally utilized a three-part test. First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party's lack of diligence. We agree with this general framework for analysis....
*360 (citations omitted). Because the analysis of the majority opinion in this case and Tejada are so thorough, I take time only to discuss the last part of De La Rosa's three-prong test, the requirement that the offending juror's failure to disclose not be due to a lack of diligence on the part of the complaining party.
Whereas voir dire examination in criminal cases has achieved an unprecedented level of tedium due to its seeming obsession with every detail of potential jurors' lives, this does not appear to be the case with voir dire in civil cases. Indeed, the voir dire examination generally seen in civil cases is often brief and superficial by comparison. In my judgment, it is the lack of clear and specific questions which most often leads to nondisclosure by potential jurors. As concerns the issue of prior litigation, the problem most often lies in asking questions that use terms which, although clear to lawyers, may not be understood by non-lawyers.
In Tejada, this Court observed that in order to show concealment Florida law requires "the moving party must demonstrate (among other things) that the voir dire question was straightforward and not reasonably susceptible to misinterpretation." Tejada, 760 So.2d at 963 (Fla. 3d DCA 2000). The trial transcripts I have come across reflect that words such as "parties," "lawsuit" and "litigation" are regularly used by both judges and lawyers and yet are rarely, if ever, defined. For example, in the present case one of the jurors was asked whether he had "ever been a party to any lawsuit? Were you either the plaintiff or a defendant in any lawsuit?" Although the answer was "no," the potential juror felt compelled to explain that he had a friend who was involved in an automobile accident some twenty years ago and he (the juror) had served as a witness in that case. Thus, although he acknowledged that he was not a party (plaintiff or defendant), he clearly had some doubts about whether being a witness brought him within the ambit of the question.
Similarly, the word "litigation" can be misleading. Potential jurors are often asked, "Have any of you ever been involved in any type of litigation?" Under the legally acknowledged meaning of the word, every person who has been divorced would have to answer such a question affirmatively. Yet, a person who has gone through a totally amicable, uncontested divorce may not believe that he or she has been involved in "litigation" because there were no disputed issues for the court to resolve. The fact that a pleading was filed and that a judge had to "rubber stamp" the paperwork can easily lead someone uneducated in the law to believe that all issues being agreed to, there was no need to "litigate" anything.
Likewise, people who, like Ms. Ferrer-Young, have had a debt referred for collection and have actually been sued in small claims court, will probably not consider that experience "litigation," where they immediately paid the claim and never went to court. Nevertheless, if such a person answered the prior litigation question in the negative, he or she might be "concealing" information.
In order to avoid these misunderstandings, it is imperative that questions propounded to potential jurors be absolutely clear. This includes explaining the meanings of all legal terms contained within the questions. Our juries are composed of people from all segments of the community. Miami-Dade County in particular enjoys a racial and ethnic diversity which is unique in the State of Florida. Potential jurors can be from a variety of countries and may have learned English as a second or even third language. Even the simplest of legal terms can be confusing to people born and raised in foreign countries.
Additionally, potential jurors possess differing levels of education. Thus, a typical jury may be composed of people with doctoral degrees and others who are barely literate. The latter may not only have *361 difficulty understanding sophisticated language, they may also be too embarrassed to acknowledge their limitations in open court. This can also be true in the case of the prior litigation question. A person who has been involved in prior litigation may be reluctant to acknowledge the same if, for example, it was a paternity suit, or if the nature of the litigation was otherwise embarrassing. Due diligence requires that such possibilities be explored.[11]
In the present case, I agree that defense counsel did not satisfy the diligence requirement of De La Rosa. Given the phrasing of the question asked and the trial court's further narrowing of the intent of the question, it was incumbent upon counsel to more thoroughly explore the issue of prior lawsuits which were not of a personal injury nature.
I also agree with the majority and the lower court that even if defense counsel had known about the lawsuit in question he would not have stricken juror Ferrer-Young. During voir dire this juror candidly admitted that she had been involved in a lengthy worker's compensation claim for injuries suffered on the job.[12] Aside from the pain and suffering she endured, she further stated that she had been forced to visit over twenty-six doctors. When questioned by plaintiff's counsel as to why she had seen so many doctors, she responded that the insurance company had a very difficult time accepting the fact that her problem was real. This statement alone was a red flag for defense counsel had he really wanted to excuse her from the jury.
More significantly, in subsequent questioning, plaintiff's counsel advised the jury that he would be calling a particular doctor, whom he identified by name, as an expert witness. Juror Ferrer-Young immediately advised that she knew that doctor and that she considered him to be an excellent physician. In spite of the fact that she not only knew one of the plaintiff's expert witnesses but actually admired him, defense counsel accepted her on the jury. In light of this record, the suggestion that if the defense had known of the small claims collection case filed against Ms. Ferrer-Young it would not have accepted her on the jury is totally disingenuous.
NOTES
[1] Hialeah Hospital settled out of court prior to trial for $1,750,000.
[2] The anaesthesiologist filed suit after Ferrer-Young's insurance carrier disclaimed coverage for the bill. The insurer claimed the treatment was not medically necessary, even though it had already paid Ferrer-Young's bills for the surgeon and assistant surgeon involved in the same procedure. When Ferrer-Young promptly filed a third-party complaint against the insurer, the claim was immediately paid. The lawsuit was voluntarily dismissed by Ferrer-Young in June of 1997, well before the trial in this action began.
[3] We understand the trial judge's dilemma and commend her careful analysis of our Wilcox decision. Judge Smith adhered to what she believed was the precedent established in Wilcox and concluded: "Applying the Wilcox analysis to the facts in our case, I must grant the defendant's motion for new trial. However, if I were permitted to further analyze whether the juror's non-disclosure of her county court suit deprived the defendant of a fair and impartial trial, I would conclude that it did not."
[4] Judge Smith acutely observed that it was unlikely defense counsel would have struck the juror even if the juror had disclosed the prior county court action, given the nature of the prior case and Ferrer-Young's generally favorable impression of doctors. Judge Smith further noted that the prior undisclosed lawsuit did not involve any controversy between Ferrer-Young and a doctor regarding doctor's services, and that Ferrer-Young in general expressed a favorable attitude toward doctors.
[5] The first potential juror questioned was juror Moran. The trial judge asked Moran:

Q: Have you ever been a party to a lawsuit yourself? Have you been a plaintiff or a defendant in a lawsuit?
The second potential juror was juror Brooks. Significantly, the trial judge narrowed the question as follows:
Q: Have you ever been a party to any lawsuit? Were you either the plaintiff or a defendant in any lawsuit?
A: No.
Q: Like arising out of a car accident or anything like that?
The next two potential jurors were questioned in the original format and were asked "Have you ever been sued or brought a lawsuit?" However, in addressing the next potential juror, juror Clarke, the court returned again to the more specific question: "Have you ever been in a lawsuit yourself, either bringing a lawsuit or sued by anyone as a result of a car accident or other incident."
[6] After this response, Ferrer-Young was not asked any further questions about being a "party" to any "lawsuit" which was the original question. Instead, the subject was changed back to a discussion of scheduling issues with regard to Ferrer-Young's doctor's appointment. Ferrer-Young responded directly to the court's question by relaying her one personal injury experience. In context, this appeared to be a response to the question. Interestingly, none of the jurors mentioned any commercial disputes when questioned as to whether they had been a party to a lawsuit.
[7] As observed by the trial judge, it is likely that Ferrer-Young was misled as to the type of litigation being questioned about because: "the emphasis in the questioning on voir dire by both the plaintiff and the defendant was on the jurors' views of medical negligence, their knowledge and experience with premature or problem deliveries, and, for defense counsel, whether the jurors would be swayed by sympathy for the brain damaged child."
[8] This is not surprising since Ferrer-Young expressed extremely favorable views toward doctors, and, if anything, fit the model juror profile from a defense perspective. Voir dire revealed that Ferrer-Young's grandfather was a cardiologist, her father worked at Miami Children's Hospital, and that her experiences with her open heart surgery and encounters with numerous doctors were positive. After reviewing the record, we agree with Judge Smith's observation that "given the nature of the prior case and Ferrer-Young's general favorable impression of doctors, he [defense counsel] probably would not have exercised a strike."
[9] As explained by the Florida Supreme court in De La Rosa, materiality is only shown where the "omission of the information prevented counsel from making an informed judgmentwhich would in all likelihood have resulted in a peremptory challenge." De La Rosa v. Zequeira, 659 So.2d at 242. See also, Bernal v. Lipp, 580 So.2d at 316-317 (same); Blaylock v. State, 537 So.2d at 1106-1107(response on voir dire is only material "if it is so substantial and important that if the facts were known [the moving party] may have been influenced to peremptorily exclude the [juror] from the jury.").
[10] In Ford Motor Co. v. D'Amario, a juror's failure to disclose three prior workers' compensation claims and a $1,000 lawsuit over a real estate transaction was found not material in a crashworthiness case against a car manufacturer. The Second District held the plaintiffs were not entitled to a new trial because "these matters are not material as they are remote in time, small in amounts, and asserted by one seeking monies, to-wit: one customarily favorable to a plaintiff." Ford Motor Co. v. D'Amario, 732 So.2d at 1146.
[11] In the interest of full disclosure, all jury panels should be advised before voir dire begins that if they consider a question too personal or potentially embarrassing it can be answered at sidebar in a somewhat more private forum.
[12] Her injuries included nine tears of the rotator cuff on the right shoulder, a dislocated scapula and collarbone, and four herniated discs.