925 So.2d 1152 (2006)
Homer WIGGINS, as Personal Representative of the Estate and Survivors of Virginia Wiggins, deceased, Appellant,
v.
Samuel H. SADOW, M.D., Appellee.
No. 4D05-599.
District Court of Appeal of Florida, Fourth District.
April 26, 2006.
*1153 Deborah J. Gander of Colson Hicks Eidson, Coral Gables, for appellant.
Thomas E. Dukes, III and Michelle M. Perez-Sotolongo of McEwan, Martinez & Dukes, P.A., Orlando, for appellee.
WARNER, J.
Homer Wiggins, as representative of the estate and survivors of Virginia Wiggins, appeals the jury verdict and final judgment in favor of Samuel H. Sadow, M.D. on Wiggins' claim of medical malpractice causing the death of Virginia Wiggins, his wife. He claims that the trial court abused its discretion in denying his motion for new trial based upon juror misconduct. He also contends that the verdict was against the manifest weight of the evidence. Because the issue of juror concealment was determined on issues of credibility, the court did not abuse its discretion. We also conclude that the trial court did not abuse its discretion in denying the motion for new trial based on Wiggins' challenge that the verdict was against the manifest weight of the evidence. We therefore affirm.
*1154 Juror Arber, who had confrontations in the past with Wiggins' granddaughter, sat on the jury. During voir dire, the juror was asked whether she knew Homer Wiggins or any of the listed witnesses. She did not state that she knew any of the listed witnesses. The juror would later testify that she did not recognize Wiggins or the members of his family who testified during the trial. However, when Wiggins' granddaughter was present in court for the announcement of the verdict, the granddaughter recognized the juror. Wiggins filed a motion for new trial based upon juror misconduct, claiming that the juror knew the family and wrongly refused to disclose her connection. The court held a hearing at which the juror, other family members, and the court bailiff testified. Based upon the juror's testimony in which she swore that she did not recognize any of the witnesses or Homer Wiggins, the court determined that the juror had not concealed her relationship to the plaintiff's family, because she had not recognized them. The court therefore denied the motion.
A trial court's order on a motion for new trial grounded on juror concealment of information is reviewed for an abuse of discretion. Taylor v. Magana, 911 So.2d 1263, 1267 (Fla. 4th DCA 2005). In De La Rosa v. Zequeira, 659 So.2d 239 (Fla.1995), our supreme court set forth a three-part test for determining whether a juror's nondisclosure of information during voir dire warrants a new trial. The De La Rosa test requires the complaining party to establish that: 1) the information is relevant and material to jury service in the case; 2) the juror concealed the information during questioning; and 3) the failure to disclose the information was not attributable to the complaining party's lack of diligence. Id. at 241. Applying that test to the facts of this case, we conclude that no abuse of discretion is shown.
Juror Arber has known Wiggins' granddaughter, Margie McPeak, since they were teenagers. However, they ceased being friends when the juror was involved in a relationship with the father of McPeak's child. According to McPeak, she and Arber engaged in a physical altercation during this time, which was several years prior to the trial of this case. McPeak was not a witness at trial, and her name was never read to the jury. She did not come to court until the verdict was read.
Wiggins' other granddaughter, Nancy D'Avino, also knew Arber. However, when they last saw each other, Nancy's last name was not D'Avino. Arber testified at the post-trial hearing that she had only known D'Avino by her maiden name, and thus she did not recognize D'Avino as someone she knew. When D'Avino testified during trial, D'Avino thought she might have recognized Arber but did not advise her grandfather's attorney of that fact because she was unsure that the juror was, in fact, Arber. It was only when McPeak saw Arber in court as the verdict was being read that she recognized Arber and notified Wiggins' attorney. Arber likewise recognized McPeak and told the deputy sheriff immediately after the jury was discharged. She was concerned that there might be a further incident, but she advised the deputy that she had not known of her connection to the family until McPeak appeared in court.
In its order denying the motion for new trial, the trial court made a finding of fact that juror Arber did not conceal any material fact during the course of the trial because she did not recognize the plaintiff or the members of the family who were present at trial before the jury retired to deliberate. Based upon the trial court's findings, the three-part De La Rosa test was not met. Although the information *1155 regarding Arber's connection with the Wiggins' granddaughters would have been relevant to her service on the jury, Arber did not "conceal" any information because she did not know of her relationship to Wiggins through his granddaughters, and she was never asked whether she knew McPeak, nor was she asked whether she knew D'Avino by a name that she would have recognized. "[I]nformation is considered concealed for purposes of the three part test where the information is `squarely asked for' and not provided." Birch v. Albert, 761 So.2d 355, 358 (Fla. 3d DCA 2000). No information was squarely asked for and concealed within the meaning of the De La Rosa test.
The court made a detailed analysis of the witnesses and found Arber's testimony credible. Although it is quite apparent that Wiggins vehemently disagrees with the findings of the trial judge, the trial court is the judge of the credibility of witnesses. We find no abuse of discretion.
As to whether the trial court erred in denying the motion for new trial on the ground that the verdict was contrary to the manifest weight of the evidence, a trial judge has broad discretion in ruling on such a motion. Brown v. Estate of Stuckey, 749 So.2d 490, 497 (Fla.1999). "If an appellate court determines that reasonable persons could differ as to the propriety of the action taken by the trial court, there can be no finding of an abuse of discretion." Id. at 498.
The gist of the medical malpractice claim was that Dr. Sadow negligently lacerated Mrs. Wiggins' renal vein during a repair of an abdominal aneurysm. This occurred because he failed to recognize that the vein was retro-aortic, or behind the abdominal aorta rather than in front of it. A retro-aortic renal vein is an anatomical anomaly that occurs in 1-2% of the population, but does not pose any health problems. Not knowing that he had lacerated the renal vein, he also failed to repair it, and Mrs. Wiggins expired during surgery. Dr. Sadow's defense was two-fold. First, he claimed that he was not negligent in failing to recognize the retro-aortic presentation of the vein, and second, he maintained that other major health problems of Mrs. Wiggins resulted in her massive blood loss and ultimate death.
Wiggins' expert, Dr. Stone, testified that Dr. Sadow fell below the standard of care in failing to recognize the placement of the renal vein. The defense expert, Dr. Faro, testified that Dr. Sadow did not fall below the standard of care in failing to recognize this anatomical anomaly from the CT scan made prior to surgery. In fact, Dr. Faro testified that a lot of radiologists would not recognize it, nor would he himself have been able to pick it out from the CT scan prospectively. Moreover, Dr. Stone admitted that he once failed to recognize the placement of the renal vein prior to surgery.
Dr. Faro admitted that once surgery commenced, there was a "possibility" that Dr. Sadow could have recognized the retro-aortic vein. Wiggins claims that this amounted to a concession that Dr. Sadow deviated from the standard of care, but Dr. Faro gave several reasons why it was not unreasonable that Dr. Sadow did not recognize it. Dr. Faro also testified that Dr. Sadow met the standard of care in his attempts to control Mrs. Wiggins' bleeding after he discovered that she was losing blood.
Although the plaintiff attempts to paint a picture where the defendant's experts were in "agreement" that the defendant violated the standard of care, a review of the entire record suggests that the testimony of the defense experts was much more nuanced. The consistent message of Dr. Faro's testimony was that Dr. Sadow met the standard of care at each stage of *1156 the surgery. The concessions that Dr. Faro made on cross-examination did not amount to concessions that Dr. Sadow committed malpractice. At the hearing on the motion for new trial, the trial court noted "there was testimony from both sides as to what the doctor did or didn't do that was appropriate or inappropriate." Finding that the case was well presented by the lawyers, the court concluded that the case simply presented disputed issues of fact which the jury resolved. It thus denied the motion. We find no abuse of discretion in the court's ruling.
Wiggins cites Fisher v. Smithson, 839 So.2d 788 (Fla. 4th DCA 2003), and Gonzalez v. Ravirifici, 745 So.2d 1145 (Fla. 3d DCA 1999), as authority for his position that a new trial should have been granted, but in each of those cases the appellate court affirmed an order of the trial court granting a new trial. In both cases, the appellate court determined that the granting of a new trial was not an abuse of discretion. If the trial court in this case had granted a new trial, we may very well have determined that it was not an abuse of discretion. See Brown, 749 So.2d 490. Nevertheless, where a review of the record shows that reasonable persons can disagree on the court's conclusion that there was disputed evidence as to the issue of negligence, we will not reverse.
Affirmed.
KLEIN, J., and BAILEY, JENNIFER D., Associate Judge, concur.