964 So.2d 286 (2007)
Michael GARRETT, Appellant,
v.
MIAMI TRANSFER COMPANY, INC., a Florida corporation, and Florida Power & Light Company, a Florida corporation, Appellees.
No. 4D06-82.
District Court of Appeal of Florida, Fourth District.
September 26, 2007.
*287 Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, LLP, West Palm Beach, and F. Kendall Slinkman of Slinkman & Slinkman, P.A., Jupiter, for appellant.
Rosemary B. Wilder and Philip Glatzer of Marlow, Connell, Valerius, Abrams, Adler, Newman, Lewis & Blevins, Coral Gables, for appellees.

ON MOTION FOR REHEARING
WARNER, J.
We grant the appellant's motion for rehearing, withdraw our previously issued opinion and substitute the following in its place, which changes the directions on remand.
The issue presented in this case is whether a court errs in refusing to grant an additur when the jury makes an award of future medical expenses but fails to award future pain and suffering damages, and the evidence is not only undisputed that the accident caused the plaintiff's injuries but also that the plaintiff will continue to suffer as a result of the injuries. We hold that the court erred in failing to grant an additur, because the award was inadequate as a matter of law. We therefore reverse for a new trial on damages.
The plaintiff, Michael Garrett, who was twenty-three years old at the time of his accident, worked for Bar Tech, a labor force hired by Florida Power and Light ("FPL") to decommission a transformer on FPL's property. Decommissioning is the process of scrapping or junking a transformer. When a transformer blows out, it must either be rebuilt or scrapped. Transformers generally are scrapped in the field because of their massive size some units weigh nearly 800,000 lbs.
On the day of the accident, Garrett's supervisor instructed him to climb to the top of the transformer to assist with removing the radiators from the unit. When he did so, the transformer tipped slightly, causing Garrett to fall about thirteen feet to the ground, injuring his hip, arm and wrist. Immediately after his fall, the plaintiff was taken to the hospital where he was treated by Dr. Jay Dennis, an orthopedic surgeon. As a result of the plaintiff's fall, the plaintiff sustained a complex left distal radius fracture in his wrist, a closed left distal humerus fracture in his arm, and a left hip injury. The wrist fracture required stabilization with an external fixation device, requiring pins in the bone to attach the external device. This device remained in place for eight weeks. The arm fracture required a cast and healed in about six weeks.
The evidence regarding the extent of Garrett's injuries and disabilities as a result of the accident was undisputed. Both plaintiff and defense experts essentially agreed on this issue.
Garrett developed carpal tunnel syndrome after his initial wrist injury and required two different surgeries to relieve numbness. In 2002 he was released for light duty work, and he went back to driving heavy equipment. At trial his treating physician, Dr. Dennis, rated him with a 16% whole body functional impairment for the wrist injury. The doctor did not expect Garrett to get any better. Dr. Dennis testified that Garrett may need additional surgery in the future should he continue to experience problems with his wrist. And if he continued in his manual labor employment, the probability of additional surgery was greater. Garrett may also develop degenerative arthritis in his wrist.
Garrett saw Dr. Girard, another orthopedic doctor, with respect to the hip injury and was treated for tendonitis and bursitis *288 during five visits in 2001 and then again for a flare-up in 2004. Dr. Girard testified that the condition would continue for the rest of Garrett's life. Dr. Girard opined that Garret had a 2% functional impairment rating for the soft tissue hip injury. As part of his treatment, he received physical therapy, and the physical therapist testified that she expected the plaintiff to walk with a limp indefinitely. Dr. Girard prescribed anti-inflammatory medication. He testified that Garrett may also need cortisone injections to treat inflammation in his hip.
None of the defense testimony disputed Garrett's injuries and disabilities. With respect to the wrist injury, defense expert Dr. Thebaut testified that Garrett sustained a 24% whole body impairment, a more significant impairment than found by Garrett's own treating physician. Dr. Thebaut opined that Garrett would always have an abnormal sensation of numbness and tingling in his wrist. He did not believe that Garrett was malingering. He also agreed that future surgery was a fifty/fifty probability.
Garrett testified that he continued to experience pain and numbness in his wrist and occasionally in his hip, but it hurt only when he was working. His wrist hurts more during winter when his wrist gets cold. When it is cold, his nerves are easily irritated, and he feels like he is receiving an electronic shock when he tries to squeeze or grab things. And if someone bumps his arm in a certain area, it can cause a shock to go down his arm. Although he continues to work, he had problems with his hip and wrist on his last equipment operating job. He has been unable to engage in some of the more energetic recreational activities that he enjoyed prior to the accident, including bull riding, hog hunting, boxing, fishing, and weightlifting.
An occupational expert testified to both Garrett's future loss of earning capacity, which he calculated at $2,000,000, and Garrett's future medical expenses, which he put in a range of $38,000 to $131,250, based upon the cost of treatment for both the wrist and his hip. The higher amount included the cost of future surgery for the wrist and injections for the hip.
The jury found the defendants, except Bar Tech, negligent and Garrett comparatively negligent. The jury awarded $50,000 for past medical expenses, $130,000 for future medical expenses, $144,000 for past lost earning ability, and $26,000 for past pain and suffering, for a total of $350,000. However, it awarded nothing for future lost earning ability and nothing for future pain and suffering. Garrett immediately argued to the court that the damages awards as to future lost earning capacity and future pain and suffering were inadequate as a matter of law, and requested that the jury be instructed to re-determine at least those items. The court denied the request and also denied Garrett's post-trial motion for additur and/or motion for a new trial on damages. In denying the motion for additur, the court stated that the amount awarded was supported by the evidence presented and that the jury's arguable misallocation of the amount returned is no more than harmless error in light of the reasonableness of the bottom line amount. This appeal follows.
A trial court enjoys broad discretion in ruling on a motion for new trial:
When a motion for new trial is made it is directed to the sound, broad discretion of the trial judge, who because of his contact with the trial and his observation of the behavior of those upon whose testimony the finding of fact must be based is better positioned than any other one person fully to comprehend the *289 processes by which the ultimate decision of the triers of fact, the jurors, is reached.
Cloud v. Fallis, 110 So.2d 669, 673 (Fla. 1959) (citations omitted).
Related to a ruling on a motion for new trial is the trial court's responsibility when considering a motion for additur or remittitur "to review the amount" of a damage award "to determine if such amount is excessive or inadequate in light of the facts and circumstances which were presented to the trier of fact." § 768.74(1), Fla. Stat. (2006). Section 768.74(5) sets forth the criteria that a court "shall consider" in "determining whether an award is excessive or inadequate."
In Allstate Insurance Co. v. Manasse, 707 So.2d 1110 (Fla.1998), the supreme court relied on Cloud in determining that a verdict was not inadequate as a matter of law where the jury had awarded future medical expenses but no future non-economic damages. Instead, the judicial determination is whether the court abused its discretion, as set forth in Cloud. It applied that test in Manasse and quashed this court's opinion, in which we had determined that the verdict awarding future medical expenses without an award of future non-economic damages was legally inconsistent. In Manasse the jury had determined that the plaintiff had suffered a permanent injury in an automobile accident. However, in its award of future medical expenses, the jury awarded only the exact amount requested by the plaintiff for palliative care. In approving the award, the supreme court explained that the jury could have concluded that the plaintiff had not proved that she would experience future pain and suffering by a preponderance of the evidence. The supreme court noted that the evidence was in dispute as to whether the plaintiff had suffered a permanent injury and whether her present complaints of pain were caused by other factors.
The supreme court approvingly quoted from Judge Klein's dissenting opinion in Allstate Insurance Co. v. Manasse, 681 So.2d 779, 784-85 (Fla. 4th DCA 1996), which stated:
Future damages are, by nature, less certain than past damages. A jury knows for a fact that a plaintiff has incurred past medical expenses, and, when it finds those expenses to have been caused by the accident, there is generally something wrong when it awards nothing for past pain and suffering. The need for future medical expenses is often in dispute, however, as it was here. It does not necessarily therefore follow, in my opinion, that an award of future medical expenses requires an award of noneconomic damages.
Our standard jury instructions do not require consistency in these verdicts. They allow a jury to return a verdict finding a permanent injury, but do not require an award of damages.
707 So.2d at 1111-12. The supreme court determined that its review of the trial court's decision revealed no abuse of discretion. It thus quashed this court's opinion.
Shortly after Manasse, the Third District relied on this rule of reasonableness in a case analogous to the present one. In Dolphin Cruise Line, Inc. v. Stassinopoulos, 731 So.2d 708 (Fla. 3d DCA 1999), a jury awarded a plaintiff $32,485 for past lost earnings and medical expenses, and $521,000 for future lost earnings and medical expenses but nothing for future pain and suffering in spite of undisputed evidence of past surgery, a permanent injury to his knee and the need for future surgery and rehabilitation. Acknowledging Manasse's instruction that the appellate court should apply the standard of reasonableness *290 in the determination of whether the trial court abused its discretion in denying an additur, the court noted the prevailing rule that "[g]enerally, where as [here], the evidence is undisputed or substantially undisputed that a plaintiff has experienced and will experience pain and suffering as a result of an accident, a zero award for pain and suffering is inadequate as a matter of law." Id. at 710. Under such circumstances, the trial court's denial of an additur is both unreasonable and an abuse of discretion. Id. at 711.
We adopted the inverse of the rule set forth in Dolphin when we held in Beauvais v. Edell, 760 So.2d 262, 264 (Fla. 4th DCA 2000) (en banc), that "where there is a dispute as to whether the injuries resulted from the accident, a verdict awarding only medical expenses does not require a new trial as a matter of law." (Emphasis added). In Beauvais, the plaintiff alleged two injuries from an accident, but there was substantial evidence that neither was caused by the accident. The jury awarded a general verdict which did not itemize damages but which equaled the exact amount the plaintiff claimed as her medical expenses. The plaintiff requested an additur for pain and suffering, but the trial court denied it. We held that the court did not abuse its discretion where the evidence was disputed. Where, however, the evidence was undisputed that the accident caused the injuries and the jury had made a specific award of past medical expenses but no past non-economic damages, we held that the court erred in failing to grant a new trial on past pain and suffering damages. See Katz v. Allstate Ins. Co., 905 So.2d 243 (Fla. 4th DCA 2005).
The theme of these and similar cases centers on the level of dispute in the evidence presented. "Where there is undisputed evidence supporting an award of damages and the jury fails to make such an award, it is error for the trial court to deny a motion for additur." Ortlieb v. Butts, 849 So.2d 1165, 1167 (Fla. 4th DCA 2003). By contrast, "where the evidence is conflicting and the jury could have reached its verdict in a manner consistent with the evidence, it is error for the trial court to veto the jury verdict by granting a motion for additur." Id. The evidence in conflict may involve causation. See id. at 1167-68; Airstar, Inc. v. Gubbins, 668 So.2d 311, 313 (Fla. 4th DCA 1996); Moore v. Perry, 944 So.2d 1115 (Fla. 5th DCA 2006); Republic Servs. of Fla., L.P. v. Poucher, 851 So.2d 866, 872-73 (Fla. 1st DCA 2003); Mayo v. Gazarosian, 727 So.2d 1140 (Fla. 5th DCA 1999). The conflicting evidence may also involve the level of future pain and suffering. See Manasse, supra, (Anstead, J., dissenting) (noting that under the majority's decision, an award of future palliative care does not require an award of future pain and suffering damages, even though such award indicates at least some future pain); Allstate Indem. Co. v. Clark, 736 So.2d 1 (Fla. 2d DCA 1998) (where evidence was disputed as to need for future medical expenses and future pain and suffering, court did not abuse its discretion in denying motion for additur/new trial); Gebis v. Oaks Condo. Ass'n, 937 So.2d 1284 (Fla. 4th DCA 2006) (where evidence was disputed regarding permanence of injury, plaintiff's contribution to injury, and plaintiff's suffering, and where the plaintiff was not affected at work, the trial court did not abuse its discretion in denying motion for new trial where jury awarded past medical expenses but no pain and suffering for foot injury).
Turning to the facts of the instant case, the evidence was undisputed that the accident caused Garrett's injuries. He did not have pre-existing conditions which contributed to his injuries. The testimony of all the doctors was consistent, and even the *291 defense expert, Dr. Thebaut, testified as to the need for future medical care for Garrett's wrist injuries. Dr. Thebaut even testified that the numbness Garrett continued to experience was permanent. Dr. Thebaut gave Garrett a disability rating that was actually higher than the one ascribed by Garrett's own doctor. The evidence was undisputed that Garrett also suffered injuries to his hip and he would continue to need treatment for flare-ups, indicating future pain.
In addition, the evidence was undisputed that while Garrett could continue to work, he suffered some pain while working. Many of his recreational activities had been curtailed by the accident, yet all doctors testified that Garrett was not malingering. Each anticipated that he would continue to have problems from these injuries.
The jury's award of future medical expenses in the maximum amount supported by the testimony indicates that the jury fully expected Garrett to continue having flare-ups of both of his injuries, and the amount the jury awarded included additional surgery, indicating an expectation that it would be necessary. Unlike the award in Manasse, this award was not merely for palliative care. It provided for the most aggressive medical treatment to which the doctors testified. Thus, the amount awarded did not "bear[] a reasonable relation to the amount of damages proved and the injury suffered." § 768.74(5)(d), Fla. Stat. (2006). Under these facts, we conclude consistent with Manasse and Dolphin Cruise, that the jury's failure to award future non-economic damages was unreasonable and the trial court's denial of additur was an abuse of discretion.
In denying the motion for additur, the trial court concluded that the award represented an arguable misallocation which was harmless error where the gross amount of the verdict was reasonable. The appellees support this view by citing two cases in which the court looked to the total verdict in deciding whether additur was appropriate. See Delva v. Value Rent-A-Car, 693 So.2d 574 (Fla. 3d DCA 1997), KMart Corp. v. Bracho, 776 So.2d 342, 343 (Fla. 3d DCA 2001). Both are distinguishable. In both KMart and Delva, the jury awarded future medical expenses in excess of the maximum amount the evidence would support. The complaining party failed to request resubmission of the verdict for reconsideration by the jury, and the Third District found this waived the right to complain of the inconsistency or excessiveness on appeal. The court approved the jury award looking to the gross verdict and concluding that the jury simply misallocated some of the award to future medical expenses.
In this case, unlike both Delva and KMart, the medical expenses were not excessive based upon the testimony presented. Expert evidence supported the entire amount. The trial judge's determination that part of the future medical expenses simply represented a misallocation required the trial court to reject the jury's finding that Garrett would sustain those expenses in the future. The trial judge impermissibly acted as a seventh juror in deciding issues of fact reserved to the jury. Also unlike the two cited cases, Garrett did not waive his objection to the inconsistency, and he requested the matter be resubmitted to the jury to resolve the issue. The trial court refused the request.
Under these circumstances, where the undisputed evidence revealed that Garrett suffered a permanent injury requiring future medical care and treatment, where it was undisputed that Garrett would suffer future limitations on his physical activities, and where the jury's verdict anticipated a *292 future surgery, the trial court abused its discretion in denying the motion for additur or new trial.
Garrett also raises a claim that the court improperly denied his motion to add a claim for punitive damages against FPL. We find this claim to be without merit.
We reverse and remand for a new trial on future non-economic damages. See ITT Hartford Ins. Co. of the Southeast v. Owens, 816 So.2d 572 (Fla.2002).
GROSS and TAYLOR, JJ., concur.