DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MIGUEL BARRERA,**
Appellant,

v.

**DENISSE RODRIGUEZ-ORENGO** and **CARL LILLQUIST,**
Appellees.

No. 4D2024-2661

[April 8, 2026]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Keathan Briscoe Frink, Judge; L.T. Case No. 062022CA007814AXXXCE.

Benedict P. Kuehne and Michael T. Davis of Kuehne Davis Law, P.A., Miami, and Joseph C. Madalon and Susan E. Lee of Madalon Law, Fort Lauderdale, for appellant.

Yvette Rose Lavelle of Boyd Richards Parker & Colonnelli, P.L., Miami, for appellees.

LOTT, J.

Miguel Barrera, Appellant and Plaintiff below, was involved in a motor vehicle accident with Appellees. He sued for his injuries and asked the jury for over $1 million in damages. The jury awarded him $20,000. He now appeals, arguing that the trial court should have: (1) ordered a new trial or at least ordered post-verdict juror interviews based on the undisclosed litigation history of two jurors that came to light after trial; and (2) awarded additur up to approximately $36,000, the amount of damages that the defense conceded was reasonable during closing argument to the jury.

With the benefit of oral argument, we reject his first argument and accept his second. Accordingly, we reverse and remand with instructions to award the requested additur.

## I. **BACKGROUND**

On November 17, 2021, Appellant Miguel Barrera was rear-ended by Appellee Denisse Rodriguez-Orengo while stopped at a red light in Pembroke Pines. The vehicle which Rodriguez-Orengo operated was owned by Appellee Carl Lillquist. Barrera was transported by ambulance to Memorial West Hospital, where he remained overnight. Appellant thereafter underwent medical treatment, including therapy and orthopedic visits, injections, imaging studies, and three surgeries. Appellant argued that his past medical expenses exceeded $663,000, his past lost wages totaled $78,880, and his projected future lost earnings were $567,120.

Appellees did not dispute that Rodriguez-Orengo rear-ended Appellant or that Appellant's initial medical treatment was reasonable. Instead, Appellees contested causation as to the more serious injuries. Defense expert Dr. Neil Schechter testified that Appellant's complaints were attributable to preexisting degenerative spinal conditions rather than the collision. During closing argument, Appellees told the jury that $36,670 represented reasonable damages for emergency services, hospital care, diagnostic testing, and chiropractic treatment.

During voir dire, the trial court instructed prospective jurors to disclose any prior lawsuits in which they had been involved and emphasized truthful answers were required. The court asked whether anyone had ever sued or been sued. Juror McNabb responded as follows:

> THE COURT: Okay. Anybody else sued or been sued? Ms. McNabb . . . .
>
> VENIREWOMAN MCNABB: Yes. Construction. A lien turned into a very large case.
>
> . . .
>
> VENIREWOMAN MCNABB: And then a foreclosure.
>
> THE COURT: Somebody did some work on your house, they claim you didn't pay them, they filed a lien?
>
> VENIREWOMAN MCNABB: Correct.
>
> THE COURT: And it ultimately ended up in foreclosure to foreclose the lien?
>
> VENIREWOMAN MCNABB: Correct.

2

> THE COURT: Okay. Anybody else, lawsuits? Back row, number -- is it Nottingham?

McNabb was ultimately selected as jury foreperson. Post-verdict investigation revealed McNabb had participated in at least seven lawsuits in two counties, including appellate litigation in this Court, involving defamation, real estate development disputes, lien foreclosures, and tortious interference claims. In one such case, the record contained an email from McNabb expressing strong cynicism toward the legal system and describing it as slow, costly, and ultimately hopeless.

Another juror, Brenden, disclosed no prior litigation. Post-verdict investigation revealed Juror Brenden and his spouse had been plaintiffs in a 2015 inverse condemnation action against Broward County, although they were two of many plaintiffs and nothing indicated they had been actively involved in the litigation.

On May 16, 2024, the jury returned a verdict finding Rodriguez-Orengo 100% at fault but awarding Barrera only $20,000 in damages—$19,300 for past medical expenses and $700 for past lost wages—while awarding nothing for future medical expenses, future lost earnings, or non-economic damages. The amount awarded was substantially less than the damages Appellees had acknowledged were reasonable during closing arguments.

Appellant moved for a new trial or, alternatively, for juror interviews based on the nondisclosure of material litigation history by the two jurors discussed above, and separately moved for additur, arguing the verdict was materially below even the minimum damages the defense conceded were reasonable. The trial court denied both motions, concluding that the jurors' failure to disclose their litigation history was not relevant or material.

## II. ANALYSIS

### A. Standard of Review

"The standard of review for an order on a motion for juror interviews is abuse of discretion." *Sterling v. Feldbaum*, 980 So. 2d 596, 598 (Fla. 4th DCA 2008).

"A trial court's order on a motion for new trial grounded on juror concealment of information is reviewed for an abuse of discretion." *Gamsen v. State Farm Fire & Cas. Co.*, 68 So. 3d 290, 293 (Fla. 4th DCA 2011).

Orders granting or denying additur in motor vehicle negligence cases are also reviewed for abuse of discretion. *Moore v. Perry*, 944 So. 2d 1115, 1117 (Fla. 5th DCA 2006). In evaluating additur, the trial court must apply section 768.74, Florida Statutes (2024), which requires the court to determine whether a verdict is "clearly excessive or inadequate in light of the facts and circumstances." *Id.* The earlier statute, section 768.043, Florida Statutes (2024), "addresses remittitur and additur with respect to cases arising out of the operation of motor vehicles," while section 768.74 later "extended the capacity of a trial judge to order remittitur or additur in any case where the trier of fact determines that liability exists . . . and renders a verdict awarding money damages." *Id.* at 1116. Regardless, "[t]he statutes are substantially similar." *Id.*

Appellate review of that determination is highly deferential. A ruling under section 768.043 may be reversed only where it "fails the test of reasonableness." *Arias v. Porter*, 276 So. 3d 49, 54 (Fla. 2d DCA 2019). Thus, where "reasonable men could differ as to the propriety of the action taken by the trial court," no abuse of discretion occurs. *USAA Cas. Ins. Co. v. Deehl*, 400 So. 3d 689, 694 (Fla. 3d DCA 2024) (quotation omitted).

## B. **New trial and/or post-verdict juror interviews based on nondisclosure of prior litigation history**

"Post-trial juror interviews should be rarely granted and the sanctity of the jury process as well as the privacy rights of the jurors themselves should be closely guarded and protected." *Sterling*, 980 So. 2d at 599 (quotation and citation omitted).

We have not stuttered: protecting the jury system is essential to the integrity of the judicial process. "Maintaining the sanctity of the jury trial is both critical and integral to the preservation of a fair and honest judicial system. It is also significant to the trust and confidence our citizens place in the judicial system." *Matarranz v. State*, 133 So. 3d 473, 476 (Fla. 2013). "The privacy and sanctity of jury deliberations are critical to the right of a jury trial." *Cave v. State*, 476 So. 2d 180, 187 (Fla. 1985). Improperly subjecting jurors to post-verdict questioning can chill "a citizen's willingness to participate in the sacred privilege and noble duty of jury service." *Huether v. Baroni*, 394 So. 3d 1245, 1250 (Fla. 5th DCA 2024).

Nonetheless, "our appellate courts have reversed for jury interviews or new trials, where jurors allegedly failed to disclose a prior litigation history or where other information relevant to jury service was not disclosed." *De*

4

*La Rosa v. Zequeira*, 659 So. 2d 239, 241 (Fla. 1995). For a new trial to be warranted, the so-called *De La Rosa* test requires three things:

> First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party's lack of diligence.

*Id.*

"A party who believes that grounds for legal challenge to a verdict exist may move for an order permitting an interview of a juror or jurors to determine whether the verdict is subject to the challenge." Fla. R. Civ. P. 1.431(h). Post-trial juror inquiry is "never permissible unless the moving party has made sworn factual allegations that, if true, would require a trial court to order a new trial." *Baptist Hosp. of Miami, Inc. v. Maler*, 579 So. 2d 97, 100 (Fla. 1991). "When the basis of a request for post-trial juror interviews is a juror's nondisclosure of information during voir dire, the motion should demonstrate entitlement to a new trial under the three-part test of *De La Rosa* . . . ." *Rodgers v. After Sch. Programs, Inc.*, 78 So. 3d 42, 45 (Fla. 4th DCA 2012).[1]

### 1. Juror McNabb

Appellant first argues that Juror McNabb's non-disclosure of her litigation history entitles him to a new trial or, alternatively, an interview.

We assume, without deciding, that Juror McNabb's unusually extensive litigation history was "material" under the *De La Rosa* test.

But we find that the other two prongs of the test were not satisfied here.[2]

---

[1] The parties did not cite, and we did not find, authority clearly delineating under what circumstances a court should simply grant a new trial without juror interviews versus when a court should grant juror interviews to determine whether a new trial is necessary on account of apparent misconduct. Appellant requests both as alternative remedies. We need not pass on the question; both inquiries are governed by the *De La Rosa* test and as explained below, Appellants do not satisfy that test.

[2] Although the trial court ruled on materiality, an appellate court may affirm if the result is correct on any basis supported by the record—the so-called "tipsy

As to concealment, McNabb did disclose *some* litigation history. She disclosed "Construction, [a] lien turned into a very large case," "and then a foreclosure." It was unclear whether she disclosed one litigation (a construction lien turned into a very large case and subsequently a foreclosure) or two litigations ((1) a construction lien turned into a very large case, and (2) a foreclosure). Either of these would be consistent with her proffered litigation history.

And after McNabb disclosed litigation(s) in response to the trial court's question, the trial court moved on to the next juror without following up or pressing for additional litigation. McNabb may well not have understood the trial court's question(s) to require her to rattle off all seven of the lawsuits that she had been involved in over a roughly fifteen-year period. *See Gamsen*, 68 So. 3d at 294 ("The moving party must demonstrate (among other things) that the voir dire question was straightforward and not reasonably susceptible to misinterpretation. A juror's answer cannot constitute concealment, where the juror's response about litigation history is ambiguous, and counsel does not inquire further to clarify that ambiguity.") (cleaned up) (citations and quotations omitted); *Rodgers*, 78 So. 3d at 45 (same); *Child.'s Med. Ctr., P.A. v. Kim*, 221 So. 3d 664, 670 (Fla. 4th DCA 2017) ("Here, the question was generic and imprecise. A differently phrased question may well have resulted in disclosure. . . . Plaintiffs' counsel did not articulate to the prospective jurors that the litigation history question sought disclosure of all prior legal matters.") (quotation omitted); *Wiggins v. Sadow*, 925 So. 2d 1152, 1155 (Fla. 4th DCA 2006) ("No information was squarely asked for and concealed . . .").

Turning to diligence—given the potential ambiguities in the trial court's questioning, the potential ambiguities in McNabb's answer, and the disclosure of one (or two) litigations, including a "very large case," it became incumbent on the parties to inquire further if they wanted to know more about her litigation history. They did not do this at all. *See Pembroke Lakes Mall Ltd. v. McGruder*, 137 So. 3d 418, 429 (Fla. 4th DCA 2014) ("If a juror mentions involvement in litigation and the complaining party does not ask follow-up questions, the party cannot then obtain a new trial because of undisclosed information relating to the litigation.") (citation omitted); *Hoang Dinh Duong v. Ziadie*, 125 So. 3d 225, 228 (Fla. 4th DCA

---

coachman" doctrine. *See Carraway v. Armour & Co.*, 156 So. 2d 494 (Fla. 1963); *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644 (Fla. 1999) (explaining an appellate court will uphold a trial court's ruling that "reaches the right result, but for the wrong reasons" "if there is any basis which would support the judgment in the record").

2013) ("Despite the rather brief inquiries by Ziadie's counsel, Dr. Duong's counsel did not ask prospective Juror S or Juror F any follow-up questions about their litigation experiences and failed to ask Juror M any questions about any litigation."); *accord Taylor v. Pub. Health Tr. of Dade Cnty.*, 546 So. 2d 733, 734 (Fla. 3d DCA 1989) ("[T]he subject response was ambiguous in nature and did not constitute, as urged, a misrepresentation of fact concerning the juror's involvement with a pending lawsuit; moreover, the plaintiff's counsel made no inquiry into this matter and did not seek to clarify the ambiguous response."); *Birch ex rel. Birch v. Albert*, 761 So. 2d 355, 358 (Fla. 3d DCA 2000) ("The fact that the defendants did not follow up on the information Ferrer–Young provided is significant for two reasons. First, because a juror's answer cannot constitute concealment, where the juror's response to a question about litigation history is ambiguous, and counsel does not inquire further to clarify that ambiguity. . . . And second, because defense counsel did not diligently discover this information.") (citations omitted).

And we note as we have before, and now with all the more force, that modern technology allows for quick, low-cost discovery of a juror's litigation history. Nine years ago, we noted that "while the diligence test does not require counsel to discover the concealed facts prior to the return of a verdict . . . counsel should check juror records without delay where possible." *Child.'s Med. Ctr.*, 221 So. 3d at 671 (citation and quotations omitted). We noted that we would consider "trial counsel's failure to run a juror's litigation history as one of several factors under a due diligence inquiry." *Id.* Technology is better now than in 2017, and it will continue to get better. Given the ambiguities cited above, trial counsel's apparent failure to use technology to explore Juror McNabb's litigation history prior to the verdict further supports our finding that they did not exercise sufficient diligence.[3]

---

[3] We noted more than a decade ago that

> Our technology has come a long way in the past ten years since *Roberts* [*ex rel. Estate of Roberts v. Tejada*, 814 So. 2d 334, 340 (Fla. 2002)], was decided. All counties now have their official public records online, and court files are also online. A paralegal in the courtroom can most likely search the public records of each juror as the juror is called during voir dire. While such searches are not perfect and would be able to pull records only in the county in which the case is being tried, it could result in catching obvious non-disclosures, such as the case here. The time may have come to rethink how the courts handle juror non-disclosure so as to prevent so much litigation over the issue and so many retrials of cases to the detriment of the entire judicial system.

In sum, because the concealment and diligence prongs were not satisfied, Appellant is not entitled to an interview or a new trial as to Juror McNabb's nondisclosure of her complete litigation history.

### 2. **Juror Brenden**

Appellant argues that Juror Brenden's non-disclosure of his litigation history requires a new trial or, alternatively, a juror interview. But we easily find that Juror Brenden's nondisclosure was not material.

"Nondisclosure is considered material if it is substantial and important so that if the facts were known, the moving party may have been influenced to peremptorily challenge the juror from the jury." *Child.'s Med. Ctr.*, 221 So. 3d at 669 (cleaned up) (citations and quotations omitted). "The test is not simply whether information is relevant and material in general, but whether it is relevant and material to jury service *in the case.*" *Roberts ex rel. Estate of Roberts v. Tejada*, 814 So. 2d 334, 340 (Fla. 2002) (emphasis in original) (citations and quotations omitted). "Materiality must be analyzed on a case-by-case basis, and [caselaw] does not mandate an automatic new trial whenever there has been a nondisclosure of litigation information." *Id.* (citation and quotation omitted).

Juror Brenden was shown to have been one of about 188 plaintiffs in an inverse condemnation procedure originally filed approximately nine years before. He was not added to the litigation until a third amended complaint was filed—approximately two years after the initial filing—wherein dozens of new plaintiffs were added, apparently to satisfy standing or similar concerns raised during the litigation, which was previously being brought only by an association. *See Michael Sherwin et al. v. Broward County*, No. CACE-15-013865 (Fla. 17th Cir. Ct. 2015). Nothing indicates that Brenden had any active or meaningful participation in the litigation. The trial court correctly held that disclosure of this litigation would not have caused Appellant to exercise a peremptory strike.

We reiterate that juror interviews are the exception, not the rule.

---

*Hillsboro Mgmt., LLC v. Pagono*, 112 So. 3d 620, 625 (Fla. 4th DCA 2013). That rings all the more true today. In an appropriate case, the Florida Supreme Court may wish to rethink the meaning of diligence under the *De La Rosa* test and consider whether, in light of modern technology, counsel must investigate and raise the issue prior to the jury's dismissal in order to preserve such a challenge.

*Accord, e.g., Parra v. Cruz*, 59 So. 3d 211, 212 (Fla. 3d DCA 2011) ("[T]he general policy is that [juror interviews] are disfavored.") (citation omitted); *Huether*, 394 So. 3d at 1249–50 ("Florida law has long recognized that post-verdict juror interviews are strongly disfavored and should be rare . . . In doing so, Florida law protects jurors from over-reaching and discontented counsel that may seek to badger them following a verdict."). The *De La Rosa* test ensures that only where a material nondisclosure occurs that could not and would not have been discovered with proper diligence can citizens carrying out their venerated civic duty of jury service be recalled, placed in the witness stand, and grilled about their purported wrongdoing.

Because that test was not met in this case, we affirm the trial court's denial of the request for interviews and a new trial.

### C. **Additur**

"Where there is undisputed evidence supporting an award of damages and the jury fails to make such an award, it is error for the trial court to deny a motion for additur." *Garrett v. Miami Transfer Co., Inc.*, 964 So. 2d 286, 290 (Fla. 4th DCA 2007) (citation omitted).

Here, Appellees conceded at closing argument that certain items of damages, totally $36,670.00, were reasonable and ought to be awarded by the jury:

> Fire rescue was $584. Emergency room was $14,000. He had some diagnostic tests at various places, approximately $2,000. The actual number is $1,907. Another place, $1,200, 1,219 to be exact. Dr. Haslett, because it's reasonable for him -- someone who has been involved in an automobile accident to go to a chiropractor, $11,110, and some additional diagnostic tests for roughly 7,850. **That's reasonable. I believe that's reasonable because it's consistent with what the actual evidence shows.** It's even consistent with what Dr. Haslett says, which is why he didn't see him after February 10th of 2022 . . .

(emphasis added). Appellees cannot be heard to argue that such an amount, which they told the jury was "reasonable," was not "clearly . . . inadequate in light of the facts and circumstances which were

presented to the trier of fact." § 768.043(1), Fla. Stat. (2024).[4]

Accordingly, we remand for the trial court to enter an appropriate amount of additur.

## III.  CONCLUSION

We affirm the trial court's denial of the request for juror interviews or alternatively a new trial based on two jurors' nondisclosure of prior litigation history, but reverse for the trial court to enter an appropriate amount of additur and any other proceedings not inconsistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*

GROSS and CIKLIN, JJ., concur.

*        *        *

***Not final until disposition of timely-filed motion for rehearing.***

---

[4] That is, of course, not to suggest any inherent fault with Appellees' strategic decision to concede these damages. The conceded damages were a fraction of the more than $1 million requested.